Dwight ARMSTRONG et al., Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY OF BIRMINGHAM, JEFFERSON COUNTY, ALABAMA, et al., Defendants.

Agnes NELSON and Oswald Nelson, Minors, etc., Plaintiffs

v.

The BOARD OF EDUCATION OF the CITY OF BIRMINGHAM, ALABAMA, et al., Defendants.

Civ. A. Nos. 9678, 10188.

United States District Court
N. D. Alabama, S. D.

May 28, 1963.

W. L. Williams, Jr., Birmingham, Ala., and Ernest D. Jackson, Sr., Jacksonville, Fla., for plaintiffs.

J. M. Breckenridge, City Atty., Cabaniss & Johnston, Joseph F. Johnston, Lange, Simpson, Robinson & Somerville, Reid B. Barnes and Ormond Somerville, Birmingham, Ala., for defendants.

LYNNE, District Judge.

When the Armstrong case (C.A. 9678) was called for trial on October 3, 1962, plaintiffs in the Nelson case (C.A. 10,-188) moved for an order of consolidation or joint trial. Since it appeared that these actions involved common questions of law and fact the court entered an oral order consolidating them for purpose of trial only and expressly provided therein that all evidence offered and all objections thereto on any grounds made by any party would be deemed to have been offered and made in each case separately.

Resting jurisdiction upon 28 U.S.C.A. § 1343(3) and proceeding under 42 U.S.C.A. § 1983, plaintiffs in each case brought a class action against defendants essentially to enjoin them from continuing their policy, practice, custom and usage of operating a compulsory biracial school system in the City of Birmingham.

By stipulation of all counsel of record each case was submitted for the judgment of the court upon the prayer for final injunctive relief upon the pleadings and the proof. While written answers in behalf of defendants had not been filed in the Nelson case it was orally stated that their answers in the Armstrong case tendered all relevant issues except for the insistence that plaintiffs in the Nelson case had no standing to maintain their action for vindication of their individual rights or to represent a class.

Faced with this threshold question, the court directed that evidence first be offered relating to the status of the Nelson children, Agnes and Oswald, of the ages of sixteen and twelve, respectively. Consisting entirely of the testimony of their father, Reverend T. N. Nelson, careful consideration thereof results in the finding of the court that each of such children had departed Birmingham for Detroit several weeks before the filing of the complaint in their behalf; that throughout the trial they were living there with their sister and attending the public schools of Wayne County, Michigan, and that there is no reasonable probability of their return to Birmingham.

Since the father has no standing to sue for the deprivation of the civil rights of his children, Brown v. Board of Trustees of LaGrange Ind. Sch. Dist., 187 F.2d 20 (5th Cir. 1951) and the children, recognized as the real parties plaintiff, were not at the time of the filing of the complaint and are not now pupils in or affected by the public school system of Birmingham, it follows that neither has shown an injury to himself and that neither has standing to represent the class. McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914); Doremus v. Board of Education, 342 U.S. 429, 432, 72 S.Ct. 394, 96 L.Ed. 475 (1952); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed. 2d 512 (1962); Conley v. Gibson, 29 F.R.D. 519 (S.D.Texas, 1961).

Therefore, a separate order will be entered in the Nelson case vacating the consolidation and dismissing the action for plaintiffs' lack of standing to sue without prejudice, however, to their right to intervene or file a supplemental complaint in the Armstrong case in the event of the return of either to Birmingham, as will hereinafter more fully appear.

With respect to standing to complain, matters stand differently in the Armstrong case. Although it was stipulated at the trial that the Shuttlesworth children, Ruby Fredericka and Fred L. Jr., and Carolyn Nash are no longer in the Birmingham public school system and do not intend to return thereto, it is undisputed that the Armstrong children, Dwight, Denise, James, Jr. and Floyd, have continuously been and are presently enrolled in such system. They have an equitable right to maintain this suit as a class action.

Plaintiffs rely upon undisputed facts in the record which are reproduced in capsulated form. The white population of Birmingham is 205,620; the Negro, 135,627. There are 8 high schools des-

ignated "White" with 409 teachers and 10,081 pupils; 5 high schools designated "Negro" with 278 teachers and 6,748 pupils; 50 elementary schools designated "White" with 781 teachers and 29,578 pupils; 42 elementary schools designated "Negro" with 697 teachers and 26,967 pupils. Never at any time has a Negro pupil been assigned or transferred to a school designated "White" or a white pupil to a school designated "Negro". Without exception white instructional personnel have been assigned only to schools designated "White" and Negro instructional personnel only to schools designated "Negro". White schools are located with reference to the concentration of white population and Negro schools with reference to the concentration of Negro population. There are overlappings in the geographical areas involved wherein there are white schools in closer proximity to the residences of Negro pupils than Negro schools. The reverse situation obtains with respect to white pupils. Notwithstanding, the custom, usage and practice historically followed, sanctioned and expected by Superintendent and Board to be followed presently, result in white pupils attending white schools and Negro pupils Negro schools.

To summarize, it graphically appears from the testimony of Dr. Theo R. Wright, Superintendent of Birmingham Public Schools, that he and the Birmingham Board of Education have operated a segregated school system based upon race in the past, are doing so now, and have formulated no plans to discontinue such an operation.

For their part, the real defendants, Superintendent and Board, advert to the allegation of the complaint that "the plaintiffs herein have not exhausted the administrative remedy [sic] provided by the Alabama School Placement Law"[1] and point to the uncontroverted evidence in this record that at no time has any Negro child, or anyone authorized to act in his behalf, applied for enrollment in or transfer to any school designated "White" and pursued the remedies afforded by such statute. Their reluctance to take the initiative in bringing about the integration of the public schools stems from something more than blind adherence to tradition. There is undisputed evidence in this record that there is a "very strong opposition" on the part of "citizens of all races" to the mixing of the different races in the schools. In addition, all witnesses who have been intimately associated with the operation of the local system over the period of many years expressed the opinion that indiscriminate mixing of the races would create many problems that would be detrimental to the interests of both groups, predicting the results of such a procedure by the use of adjectives ranging from "chaotic" to "catastrophic".

Charts, representing the results of Kuhlmann-Anderson Tests administered to pupils upon entering the first grade, California Mental Maturity Tests, Stanford Achievement Tests, and California Achievement Tests, all administered without reference to pending litigation, comparing the performances of white and Negro pupils in the same grade groups, were received in evidence as relevant to the contention of defendants that there are distinct differences in the *average or mean* mental abilities of the two groups which they are obliged to take into account in maintaining a sound educational program.

Of course the starting point in any school segregation case must be Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the implementing decree of the court, Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), and its reinterpretive opinion in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed. 2d 5, 19 (1958). The basic premise of the court was expressed in simple, uncomplicated language: "Separate educational facilities are inherently unequal."

1. Code of Ala., tit. 52, § 61(1) et seq.

From it there flowed freely and naturally the enunciation of the constitutional principle: "Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment." 347 U.S. at page 495, 74 S.Ct. at page 692.

■ Insofar as the opinions of experts in the fields of psychology and anthropology, in deposition, book and pamphlet form, may constitute an attack upon the major premise of the court, they are rejected out of hand. It would be supererogation to labor the obvious, that this court is bound by the opinions and judgments of the Supreme Court.

But the problem does not end there, for district courts have been invested with and are expected honestly and fairly to exercise discretion in the enormous task of desegregating public schools. The course which this court should follow was staked out in its opinion in Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372, 384 (N.D. Ala.1958) wherein Judge Rives, as its organ, concluded with the pithy statement:

"All that has been said in this present opinion must be limited to the constitutionality of the law *upon its face*. The School Placement Law furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color.

We must presume that it will be so administered. If not, in some future proceeding it is possible that it may be declared unconstitutional in its application. The responsibility rests primarily upon the local school boards, but ultimately upon all of the people of the State."

The Supreme Court, on direct appeal, granted the motion to affirm and affirmed the judgment upon the limited grounds, quoted directly above, on which this court rested its decision. Shuttlesworth v. Birmingham Bd. of Education, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 (1958).

■■ As this court sees it, the law of this case is that the Alabama School Placement Law "furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color". Under that law the initiative is with the individual pupil, or those authorized to act in his behalf, to apply for assignment or transfer. Before this court may grant injunctive relief, the administrative remedies provided therein must first have been exhausted.[2]

Although the Court of Appeals for the Fifth Circuit has on frequent occasions come to grips with school segregation problems and has been especially alert to strike down deviations by district courts from the constitutional norm of Brown in sometimes trenchant opinions delivered by able judges,[3] all of which have been carefully read and considered by this court, it has heretofore had no cause

2. The appeals to the courts provided by Section 9 of the Alabama School Placement Law are judicial, not administrative remedies. After administrative remedies before the school board have been exhausted, judicial remedies for denial of constitutional rights may be pursued at once in this court without pursuing state court remedies. Lane v. Wilson, 307 U. S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Carson v. Warlick, 238 F.2d 724, 729 (4th Cir.1956).

3. Brown v. Rippy, 233 F.2d 796 (5th Cir. 1956); Avery v. Wichita Falls Independent School Dist., 241 F.2d 230 (5th Cir. 1957); Orleans Parish School Board v. Bush, 242 F.2d 156 (5th Cir. 1957); Gibson v. Board of Public Instruction of Dade County, 246 F.2d 913 (5th Cir. 1957); Rippy v. Borders, 250 F.2d 690 (5th Cir. 1957); Gibson v. Board of Public Instruction of Dade County, Fla., 272 F.2d 763 (5th Cir. 1959); Boson v. Rippy, 275 F.2d 850 (5th Cir. 1960); Mannings v. Board of Public Instruction, 277

to consider whether the Alabama Law has a permissible scope of operation in the desegregation of public schools.

On the other hand, the Court of Appeals for the Fourth Circuit has dealt frequently with the North Carolina Pupil Enrollment Act, strikingly parallel to the Alabama Law. In Carson v. Warlick, 238 F.2d 724 (4th Cir. 1956), cited with approval by this court in Shuttlesworth, the late, great Judge Parker, writing for the court, after holding that the North Carolina Act contained adequate standards, observed:

"Somebody must enroll the pupils in the schools. They cannot enroll themselves; and we can think of no one better qualified to undertake the task than the officials of the schools and the school boards having the schools in charge. It is to be presumed that these will obey the law, observe the standards prescribed by the legislature, and avoid the dis-

crimination on account of race which the Constitution forbids. Not until they have been applied to and have failed to give relief should the courts be asked to interfere in school administration."

In an unbroken line of decisions [4] that court has continued to apply the doctrine of exhaustion of administrative remedies fairly and lawfully conducted. That is not to say that that court would tolerate a discriminatory application of the Act by refusing assignment or transfer to any school of any pupil because of his race or by requiring the applicant to submit to futile, burdensome or discriminatory administrative procedures.

Superintendent and Board have assured this court that discrete desegregation would be much less disruptive than massive integration. They insist that in implementation of the Alabama Law regulations [5] governing assignment and transfer of pupils in the City's public schools have been in effect since June,

F.2d 370 (5th Cir. 1960); Boson v. Rippy, 285 F.2d 43 (5th Cir. 1960); Augustus v. Board of Public Instruction, 306 F.2d 862 (5th Cir. 1962); Bush v. Orleans Parish School Board, 308 F.2d 491 (5th Cir. 1962).

4. Covington v. Edwards, 264 F.2d 780 (4th Cir. 1959); Holt v. Raleigh City Board of Education, 265 F.2d 95 (4th Cir. 1959); McCoy v. Greensboro City Board of Education, 283 F.2d 667 (4th Cir. 1960); Jeffers v. Whitley, 309 F.2d 621 (4th Cir. 1962); Wheeler v. Durham City Board of Education, 309 F.2d 630 (4th Cir. 1962).

5. 1. Except as otherwise expressly provided by law and these regulations, and subject to supervision and review by the board, the City Superintendent of Schools shall exercise the authority and responsibility of the Board of Education of the City of Birmingham with respect to the assignment (including original and all other admissions to the school system), transfer and continuance of pupils among and within all public schools operated under the jurisdiction of the board.

2. The Superintendent shall have continuing authority to determine the particular public school to be attended by each child applying for assignment or transfer to the public schools. No child shall be entitled to be enrolled or entered in

a public school until he has been assigned thereto by the superintendent or his duly authorized representative. All school assignments shall continue without change until or unless transfers are directed or approved by the superintendent or his duly authorized representative.

3. Applications for the assignment or transfer of pupils to particular schools shall be directed to the superintendent and shall be delivered to the school principal unless otherwise directed by the superintendent, on forms provided by the superintendent, who will keep supplies of such forms available at the offices of the board.

4. A separate application must be filed for each pupil desiring assignment or transfer to a particular school. Joint applications will not be received or considered.

5. Applications for assignment or transfer of pupils must be filled in completely and legibly in ink or typewriter and must be signed by both parents, if living, or the legal guardian of each child for whom application is made. In case of denial of an application notice thereof will be mailed to the parents or guardian, at the address shown on the application, which shall be deemed the final action of the board unless a hearing before the board is requested in writing within fif-

1958, and that they stand ready to comply with the law when any individual sets the administrative machinery in motion. This court will not sanction discrimination by them in the name of the placement law but it is unwilling to grant injunctive relief until their good faith has been tested. If it should be demonstrated that it has been unconstitutionally applied, under the settled authorities the court would be compelled to order the submission of a desegregation plan for its approval.

Adequate time remains before the opening of the September, 1963, school term for the processing of applications for assignments or transfers in behalf of interested individuals. Jurisdiction of this action will be retained for the purpose of permitting the filing of such supplemental complaint, if any, as might be entitled to be presented, in case of any unconstitutional application of the Alabama School Placement Law against the plaintiffs, or others similarly situated, or of any other unconstitutional action on the part of defendants against them. The issues tendered by any supplemental complaint will be given a preferred setting on the docket of this court and will be heard on five days notice to defendants.

teen days from the date of mailing of such statement.

6. The superintendent may in his discretion require interviews with the child, the parents or guardian, or other persons and may conduct or cause to be conducted such examinations, tests and other investigations as he deems appropriate. In the absence of excuse satisfactory to the superintendent or the board, failure to appear for any requested examination, test or interview by the child or the parents or guardian will be deemed a withdrawal of the application.

7. The delivery of such forms shall not constitute a request for hearing by the board. If a hearing by the board is requested with respect to the superintendent's conclusion on an application, the parents or guardian will be given at least five days' written notice of the time and place of the hearing. The hearing will be begun within thirty days from the receipt by the board of the request, but the board may in its discretion postpone the hearing upon request. Failure of the parents or guardian to appear at the hearing will be deemed a withdrawal of the application.

8. Hearings may be conducted before the board, or before a committee of not less than three members thereof, or a member thereof, or such person as the board may designate as a hearing examiner as provided by law. Hearings will be held at such times and places as the board or its committee or hearing examiner may lawfully determine and may be adjourned from time to time for the convenience of parties, witnesses, or the board or hearing examiner; provided however that nothing herein shall preclude any applicant from filing a request for hearing in accordance with Section 7 of the Placement Act and the right to have such hearing held beginning with the time prescribed therein.

9. Unless postponement is requested by the parents or guardian, the board will notify them of its decision within twenty days after the conclusion of the hearing. Exceptions to the decision of the board may be filed, as allowed by law, within five days of notice of the board's decision, and the board shall meet within fifteen days of the receipt of the exceptions to consider the same.