**Birdie Mae DAVIS et al., Plaintiffs,**

v.

**BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA, et al., Defendants.**

**Civ. A. No. 3003-63.**

United States District Court
S. D. Alabama, S. D.
June 24, 1963.

Jack Greenberg, Constance Baker Motley, Derrick A. Bell, Jr., New York City, Vernon Z. Crawford, Clarence E. Moses, Mobile, Ala., for plaintiffs.

Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., Joseph F. Johnston, Birmingham, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

This cause was submitted on plaintiffs' motion for a preliminary injunction, directing defendants to present for approval of the court, within a period to be determined by the court, a plan for the reorganization of the entire school system of Mobile County, Alabama, into a unitary non-racial system.

The motion purportedly sought relief in the alternative, but the first alternative prayed permanent relief "upon the con-

clusion of the trial" and hence did not seek interlocutory relief.

The complaint and motion in this case were filed on March 27, 1963. On April 25, plaintiffs urged the granting of the motion and suggested, in open court, without previous notice, thirty days as the period of time to be determined by the court in which defendants should be ordered to submit a plan for the reorganization of the Mobile County School system. The court took the motion under submission on that date, and directed the parties to file briefs within designated times. The court's action in this matter was appealed by plaintiffs, and the appeal was dismissed by the Court of Appeals by order dated May 24, 1963.

For the reasons stated below, the motion is denied as to the specific relief requested, requiring the presentation of a plan within thirty days. However, an interlocutory order will be entered which will assure the protection of the rights of the plaintiffs.

Based upon the affidavits filed by plaintiffs and respondents and on facts of which the court takes judicial notice, the court makes the following findings of fact.

## FINDINGS OF FACT

1. The Mobile County School System is administered by the Board of School Commissioners of Mobile County, a five-man Board. The professional staff is under the direction of a County Superintendent of Education and his several Assistant Superintendents, each being in charge of a particular phase of Board activities.

2. During the school year 1962–63, there were 89 schools in the Mobile County School system, accommodating a pupil load of approximately 75,000 pupils. More than 2,370 teachers are employed in addition to 105 non-teaching school principals and assistants. More than 200 public school busses are operated by the Board in the transportation of school children in Mobile County.

3. The schools of Mobile County are, and have been since the end of World War II, seriously overcrowded. During this period, the pupil load has doubled. Forty-two percent of the increase in the number of pupils in the State of Alabama since 1940, has occurred in Mobile County. The average annual pupil increase has been 3,000.

4. As a result of the rapid growth of the school population, a building program sufficient to house properly the students fell five years behind. As a consequence, it was necessary to institute half-day or "double" sessions, the number of pupils in double sessions amounting to as many as 14,000 at one time.

5. In an effort to accommodate the pupil load, the School Board has engaged in an accelerated building program, and as a result the physical facilities are gradually overtaking the deficit. The administrative staff of the School Board has employed careful planning to utilize the space available, and throughout this period has resorted to the transportation of pupils from crowded schools nearer their homes to more distant schools where less crowded conditions existed. Many wooden portable classrooms have been constructed and utilized at the more crowded schools. As a result of these efforts, the number of pupils in double sessions has gradually decreased over the years.

6. Fourteen new schools, with more than three hundred rooms, are under construction or are about to be commenced, designed for occupancy in September of 1964. At that time, for the first time since World War II, it is probable that no student within the system will be in double-session classes. However, double sessions must continue through the school year 1963–64.

7. In normal years, in the Mobile County School System, the planning for a school term commences in March before the term beginning in September. The Board of School Commissioners of Mobile County followed the stated practice, and the planning for the session 1963–64 began in March of 1963.

8. Planning by the School Board staff consists of an ascertainment of pupil load based upon careful estimates and formulae derived from the experience of past years. The gross pupil load for each school is then broken down into class-by-class figures which are furnished to the Assistant Superintendents. Based upon these figures, classes are organized and pupils assigned thereto; the curriculum is established for each school; necessary supplies are determined and ordered; class-room teachers are assigned, involving in many cases individual transfers; and school busses are allocated and routed.

9. The registration of the first-grade pupils for the term 1963–64 was accomplished before the end of the last preceding school term. Each registrant was placed in a class, and teacher assignments made.

10. Substantially all of the planning for the 1963–64 school session has already taken place, and most of the necessary administrative details have been accomplished. Teachers and the administrative personnel of the various schools have largely departed the area for additional professional schooling, or are on vacation, or in other summer employment.

11. Any major re-allocation of pupils, as would be required in a general desegregation process, would require the abandonment of planning already accomplished and the evolving of new plans. Such planning would be more difficult of accomplishment than a normal plan in that the administrative personnel would be without knowledge of pupil distribution, and the formulae evolved in normal years would be inappropriate. Many administrative details already accomplished would require cancellation. It would be necessary that administrative and teaching personnel be available for consultation and study of the problems peculiar to each of the schools involved. Many of these personnel are unavailable.

12. Teaching personnel would have to be re-assigned in many instances. In the realm of teacher assignment and transfer, many human difficulties exist. Consideration of community needs must be co-ordinated with consideration of individual teacher qualifications and personality. It would be necessary to ascertain the qualifications of each teacher to be assigned to desegregated schools.

13. By reason of limited physical facilities, personnel problems, and administrative commitments, it is not now, nor has it been since the hearing of the motion, reasonably possible to reorganize the school system of Mobile County within such time as to affect the school year 1963–64.

14. The applications by the individual student plaintiffs for transfer to Baker High School during January 1963, were denied for valid administrative reasons.

## OPINION

■ Under the circumstances disclosed by the findings of fact, it is clear that the motion for interlocutory relief cannot be granted as a practical matter, independent of other considerations. The radical revision of school attendance areas and other far-reaching administrative changes in the city-county school system contemplated by the motion, simply cannot be managed within the time available. It is very doubtful that it could have been managed within a period of four to six months, even if all teachers and other administrative personnel were available for the entire time, which they are not. It is certain that no such order could now be made effective in the absence of every element which would be essential to its success—time, people, and, in all probability, money.

■■ No plan or basis for general rearrangement of an entire local school system should be required by this or any court without affording to both the school authorities and the public ample time for consideration and discussion of alternatives. The arbitrary, hasty, and premature imposition of a plan would defeat the intended purpose and would create confusion, and impair the educational process for all pupils.

That it is impossible to predict what specific plan would be required upon the final outcome of this case, is made plain by the decision of Judge Lynne for the Northern District of Alabama in Armstrong v. Birmingham Board of Education, 220 F.Supp. 217. That decision was filed on May 28, 1963, after the submission of this motion. It holds, following the decision upholding the validity of the Alabama school placement and related laws by the Supreme Court of the United States in Shuttlesworth v. Birmingham Board of Education, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 (1958), that the principle of the Brown case can be fairly and adequately applied by the school authorities through the processing of applications pursuant to the State laws, and that any denial of constitutional rights in the handling of such applications can be corrected by the District Court on motion or by other proper proceeding.

Although the Armstrong decision would not necessarily be controlling here after final hearing, it does furnish a sound and appropriate basis for rejecting the notion that the sweeping reorganization proposed by the motion is now necessary for plaintiffs' protection.

The Fifth Circuit Court of Appeals, 318 F.2d 63, in its *per curiam* opinion in this case, handed down on May 24, 1963, had this to say: "The Supreme Court in the second Brown case [Brown v. Board of Education of Topeka], 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, and in Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, wisely left an area of discretion in the desegregation process in the District Courts, feeling that they were close to the local problems, and to school officials, and the children involved."

In line with this, I feel compelled to state here that this court ordered the desegregation of the municipal golf course in Mobile on the 13th day of March 1961. That case had been held under advisement for fourteen months. The opinion was written long prior to its release. The time of release was chosen by the court as being opportune, and evidently it was. There has been no incident on the golf course since its integration.

This court took under submission on July 25, 1961, motions to dismiss in the desegregation case involving the facilities of the Mobile Municipal Airport. On October 3, 1961, the motions were denied. The case is still pending, but will be dismissed as moot. The Airport facilities have long since been integrated. The court, close to the community and its problems, believed that this would come about voluntarily and without the necessity of judicial enforcement. Relying upon this belief proved providential. There has not been the first incident.

There is now pending in this court a case for the desegregation of the City Bus Lines for the City of Mobile. The City Bus Lines have long since been integrated. There have been no incidents, though the court has never ruled on this case. This case, at the appropriate time, will also very likely be dismissed as moot, though there is one city ordinance which must either be repealed or be stricken down by the court.

The libraries in the City of Mobile have long since been integrated, though no case was ever filed for their integration. Many drugstore lunch counters in Mobile are integrated, and many chainstore lunch counters have been integrated, though no suits have been filed.

Mobile is perhaps the most desegregated city in the South, with no unfortunate incidents. If and when the appellate courts are called upon to pass on the procedure which the District Court here outlines, is it too much to ask that they be mindful of that "area of discretion in the desegregation process to the District Courts," left by the Supreme Court in the second Brown case, and approved as wise by the Court of Appeals for this Circuit in the instant case? If so, this court has every reason to believe that the mandate of the court will be honestly, conscientiously, and fairly carried out with the least possible, if not

complete absence of, unfortunate incidents.

The specific relief prayed for in the motion will be denied. The case will be set for trial on the 14th day of November 1963. Consideration of the motion to dismiss, filed by the defendants, will be reserved until the trial of the cause. Defendants will be granted twenty days from the date of this order to file an answer.

 In addition to any other relevant evidence which defendants may choose to offer, they will be directed to prepare and present at the trial a specific plan for the operation of the schools of Mobile County on a racially non-discriminatory basis, consistent with the principles established by the Supreme Court, to commence at the beginning of the 1964–65 school year.

Entered this the 24th day of June 1963.