Everett M. GILMORE, Jr., et al., Plaintiffs,

v.

Jesse JAMES, Treasurer of the State of Texas et al., Defendants.

Civ. A. No. 3–1777.

United States District Court
N. D. Texas,
Dallas Division.

Aug. 30, 1967.

Judgment Affirmed Jan. 15, 1968.

See 88 S.Ct. 695.

David R. Richards, American Civil Liberties Union, by Fred O. Weldon, Jr., Dallas, Tex., for plaintiffs.

Crawford C. Martin, Jr., Atty. Gen. of Tex., and W. O. Shultz, Asst. Atty. Gen., Austin, Tex., for defendants Jesse James, Robert Calvert and Board of Regents of University of Texas.

H. P. Kucera, of Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendant Dallas County Junior College.

Before GOLDBERG, Circuit Judge, and HUGHES and TAYLOR, District Judges.

OPINION

GOLDBERG, Circuit Judge, and TAYLOR, District Judge.

Everett M. Gilmore, Jr. was a tuba instructor at Dallas County Junior College when that newly created institution first began its academic curriculum in September, 1966. Upon his refusal to execute the non-subversive loyalty oath required of all instructors at the college,[1] Gilmore was dismissed.

1. State of Texas
County of Dallas

I, _____, the affiant herein, do solemnly swear (or affirm) as follows:

That the affiant is not, and has never been, a member of the Communist Party. (The term "Communist Party" as used herein means any organization which (a) is substantially directed, dominated or controlled by the Union of the Soviet Socialistic Republics, or its satellites, or which (b) seeks to overthrow the Government of the United States, or of any State, by force, violence or any other unlawful means) and

That the affiant is not, and, during the preceding five year period, has not been a member of any organization, association, movement, group, or combination which the Attorney General of the United States, acting pursuant to Executive Order No. 9835, March 21, 1947, 12 Federal Register 1935, has designated as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of facts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of Government of the United States by unconstitutional means;

or in the event that the affiant has during such five year period been a member of any such organization, association, movement, group or combination, its name and the circumstances in detail which led him to join it are as follows:

---

and at the time when he joined and throughout the period during which he was a member, he did not know that its purposes were the purposes which the Attorney General of the United States has designated; and

That the affiant is not, and, during the preceding five year period, has not been, a member of any "Communist Political Organization" or "Communist Front Organization" registered under the Federal Internal Security Act of 1950 (50 U.S. C.A., Sec. 781, et seq.) or required to so register under said Act by final order of the Federal Subversive Activities Control Board; or, in the event that the affiant has during such five year period been a member of any such organization, its name and the circumstances in detail which led him to join it are as follows:

---

and at the time when he joined it and

He thereafter commenced against the trustees of the college this action for a declaratory judgment and injunctive relief,[2] alleging that he was deprived of his First Amendment rights of freedom of speech, belief, conscience and association by the enforcement by the college trustees of Article 6252–7, Vernon's Ann. Texas Revised Civil Statutes,[3] allegedly an unconstitutionally vague statute.

throughout the period during which he was a member, he did not know that its purpose was to further the goals of the Communist Party or that it was controlled by the Communist Party.

_____
 Affiant

Subscribed and sworn to before me this _____ day of _____, 19__, to certify which, witness my hand and official seal of office.

_____
Notary Public, Dallas County, Texas

2. Plaintiff seeks injunctive relief, pursuant to Title 28 U.S.C.A., § 2281.

> § 2281. Injunction against enforcement of State statute; three-judge court required

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title. June 25, 1948, c. 646, 62 Stat. 968.

3. Section 1. No funds of the State of Texas shall be paid to any person as salary or as other compensation for personal services unless and until such person has filed with the payroll clerk, or other officer by whom such salary or compensation is certified for payment, an oath or affirmation stating:

"1. That the affiant is not, and has never been, a member of the Communist Party. (The term 'Communist Party' as used herein means any organization which (a) is substantially directed, dominated or controlled by the Union of Soviet Socialist Republics, or its satellites, or which (b) seeks to overthrow the Government of the United States, or of any State, by force, violence or any other unlawful means); and

"2. That the affiant is not, and, during the preceding five year period, has not been, a member of any organization, association, movement, group or combination which the Attorney General of the United States, acting pursuant to Executive Order No. 9835, March 21, 1947, 12 Federal Register 1935,[1] (footnote omitted) has designated as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of Government of the United States by unconstitutional means; or, in the event that the affiant has during such five year period been a member of any such organization, association, movement, group or combination, he shall state its name, shall state in detail the circumstances which led him to join it, and shall state that, at the time when he joined and throughout the period during which he was a member, he did not know that its purposes were the purposes which the Attorney General of the United States has designated; and

"3. That the affiant is not, and, during the preceding five year period, has not been, a member of any 'Communist Political Organization' or 'Communist Front Organization' registered under the Federal Internal Security Act of 1950 (50 U.S.C.A., sec. 781, et seq.) or required to so register under said Act by final order of the Federal Subversive Activities Control Board; or, in the event that the affiant has during such five year period been a member of any such organization, he shall state its name, shall state in detail the circumstances which led him to join it, and shall state that, at the time when he joined it and throughout the period during which he was a member, he did not know that its purpose was to further the goals of the Communist Party or that it was controlled by the Communist Party."

Section 2. The Department of Public Safety shall obtain a list of the organizations, associations, movements, groups and combinations comprehended by Subdivisions 2 and 3 of Section 1 hereof, and shall furnish a copy of such list to the various agencies which expend funds of this State. Such agencies shall make copies of such list and shall furnish them to their employees in order that the employees can readily perceive whether they

In plaintiff Gilmore's first amended complaint he is joined by Cameron Cunningham, a second year law student at the University of Texas School of Law in Austin, Texas. As a student in a state supported institution of higher learning, Cunningham has been required to comply with the provisions of Article 2908b, Vernon's Ann.Texas Revised Civil Statutes, by executing a loyalty oath similar to the one required of Gilmore. Cunningham seeks to enjoin the Board of Regents of the University of Texas from enforcing the provisions of the Texas statute requiring the student oath.

By plaintiff's second amended complaint, Robert Palter, Stuart Pullen and Thomas Mantle join the aforementioned duo. Palter is a full professor of philosophy at the University of Texas and has been so employed since September, 1964. Pullen has been an assistant instructor in government at the University of Texas since September, 1965. As a condition of their initial employment, Palter and Pullen were required to execute the oath prescribed by Article 6252–7. They attack that statute on two grounds: first, as a consequence of their

signing the oath, unconstitutional restrictions upon their rights of freedom of speech and association have resulted; they are required to conform to a standard of conduct which is not susceptible of accurate determination; and they may not repudiate the oath without facing loss of status and salary. Secondly, the oath was unconstitutionally applied to them and is now and will in the future be so applied to all members of the class which they allegedly represent, to-wit, prospective employees of the University of Texas. They seek to enjoin the Regents of the University of Texas from requiring continued compliance with the provisions of Article 6252–7 and to enjoin the requirement of such oath-taking by such members of their class.

Mantle is a student at the University of Texas. On March 22, 1967, he began employment in the library of the School of Law at Texas University. Subsequent to commencing his duties at the library, Mantle was informed by the personnel office of the university that as a condition of his employment it was necessary that he execute a loyalty oath prescribed by Article 6252–7.[4]

can lawfully and truthfully file the oath or affirmation required herein.

Section 3. * * *

Section 4. It is specifically provided, however, that the oath required herein shall supersede all other loyalty oaths now required by law or that may be required in appropriation Acts by the Legislature.

Section 5. If any portion of this Act should be held to be unconstitutional, the unconstitutionality of such portion shall not affect the validity or application of the remainder of the Act. Acts 1953, 53rd Leg., p. 51, ch. 41.

4. I, _____, the affiant herein, do solemnly swear (or affirm) as follows:

1. That the affiant is not, and has never been, a member of the Communist Party. (The term "Communist Party" as used herein means any organization which (a) is substantially directed, dominated or controlled by the Union of Soviet Socialistic Republics, or its satellites, or which (b) seeks to overthrow the Government of the United States, or of any State, by force, violence or any other unlawful means); and

2. That the affiant is not, and, during the preceding five year period, has not been, a member of any organization, association, movement, group, or combination which the Attorney General of the United States, acting pursuant to Executive Order No. 9835, March 21, 1947, 12 Federal Register 1935, has designated as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of Government of the United States by unconstitutional means; and

3. That affiant is not, and, during the preceding five year period, has not been, a member of any "Communist Political Organization" or "Communist Front Organization" registered under the Federal Internal Security Act of 1950 (50 U.S. C.A., sec. 781, et seq.) or required to so register under said Act by final order of the Federal Subversive Activities Controls Board.

_____
Affiant

Mantle was given a list of organizations designated by the Attorney General of the United States as totalitarian, fascist, communist or subversive,[5] asked to read the list and sign the oath. Upon discovering that an organization of which he was a member appeared on the list,[6] Mantle was compelled to decline to execute the oath and was thereupon dismissed from the employment by the university.

By motion to intervene, Michael Kahn became a party plaintiff. Kahn was an assistant professor of psychology at Yale University in New Haven, Connecticut. Consummating a period of negotiations Kahn was offered, on April 5, 1967, the position of associate professor of psychology at the University of Texas. He seeks to enjoin the regents of that university from requiring of him the Article 6252–7 oath, which has been made a condition of his employment, for the reason that his constitutional rights of freedom of speech and association are threatened to be impaired by the oath requirement.

Jurisdiction of all parties plaintiff is predicated on 42 U.S.C.A. §§ 1983, 1984 and 28 U.S.C.A. §§ 1331, 1343, 2201, 2202, 2281 and 2284.

By their pleadings and by their oral arguments defendants Dallas Junior College and the University of Texas raise a number of issues peculiar to each of the respective plaintiffs which must be disposed of before a consideration of the substantive nature of the oath is undertaken. We turn to these issues.

## STANDING

### a. Gilmore

Dallas County Junior College, hereinafter referred to as El Centro, was created by popular vote of the residents of Dallas County, Texas, in May, 1965, in accordance with the provisions of Article 2815h, Vernon's Ann.Texas Revised Civil Statutes.[7] Under the provisions of Article 2815k, Vernon's Ann.Texas Revised Civil Statutes, the newly elected Board of Trustees began to organize academic departments. A music department was established, and the director thereof was commissioned to solicit the employment of qualified musicians to instruct students in the playing of various musical instruments. A list of 25 such individuals was submitted by the director to the trustees, all of whom were approved. Gilmore was on this list.

El Centro's employment of any one of the individuals on the list of qualified musicians was contingent upon a student registering for instruction on the respective instrument to be taught by that individual. One student registered for instruction on the tuba for the fall semester, September, 1966, to January, 1967, and Gilmore's services were engaged.

No written contract was consummated by Gilmore and El Centro; their agreement was wholly oral. Gilmore was to be paid $150 a semester in quarterly installments of $37.50 each.

Gilmore began his teaching assignment in September, 1966. Apparently through inadvertence on the part of El Centro, he was not asked to execute the loyalty oath at that time. On October 15, 1966, when it was brought to Gilmore's attention that submission to the requirements of the oath was a condition of employment at El Centro, he declined to execute the same in a letter to the Director of Music. By letter of October 18, 1966, the Associate Dean of Instruction informed Gilmore that the college had "no choice but to accept [his] refusal and to seek another teacher." Two days thereafter Gilmore was sent a check by the college in the amount of $37.50, representing that portion of the agreed remuneration he had earned. Gilmore returned the check in a letter-appeal to the Board of Trustees in which he stated in part, "The termination of my employment by the college deprives me of constitutional protections and I request prompt reinstatement." By reply letter

---

5. See, Executive Order No. 10450 and first, second, third and fourth supplements thereto, December 9, 1953.

6. The Industrial Workers of the World

7. Tex.Rev.Civ.Stat., Art. 2815h, sec. 20.

the President of El Centro informed Gilmore that,

"Your employment was part-time on the approved list of musician teachers or instructors, however, with the understanding that you would be called if and when your services were desired. Since you refused to sign the loyalty oath which the Attorney General has advised that our District must comply with, the District has no alternative but not to call on you for further service."

In his reply to plaintiff's complaints the Attorney General of Texas, representing defendant Texas University, avers that Article 6252–7 did not apply to El Centro for the reason that the college had not at the time of Gilmore's dismissal received funds appropriated by the Texas Legislature.[8] Presumably, in reliance on this pleading, and subsequent thereto, El Centro admitted that it had erroneously applied Article 6252–7 to Gilmore and tendered into the registry of the Court $150, representing the full salary Gilmore was to receive for the semester for which he had been retained to render his services.

El Centro defends against Gilmore's claims on three procedural grounds: (1) the oath, which under the terms of the statute did not apply to Gilmore, was erroneously required of him by the college and therefore he has no standing to attack the *statute* in a three-judge court, but must resort to a state court and seek damages; (2) any claim Gilmore had against the college is moot because he had no right to public employment; his services were wholly contingent upon a student's registering for tuba instruction, and the tender to the court of Gilmore's one semester's salary of $150 rectifies any harm done to him; and (3) Gilmore failed to exhaust his state remedies before entering federal court.

**(1) Standing in a Three-Judge Court**

■■■ Article 6252–7 is explicit in applying only to those individuals who receive state funds as part or all of their salary. Plaintiff Gilmore admits that El Centro was not in receipt of state funds to disburse to its instructors at the time he was dismissed. He nonetheless argues that the application to him of the statutory oath by the trustees of El Centro is sufficient to confer standing upon him to seek an injunction against the enforcement of Article 6252–7. Defendants cite to the court numerous authorities in support of the position that this court is without authority to interpret or construe the meaning of a state statute and urge us to refrain from undertaking to decide the question of Gilmore's amenability to Article 6252–7. Readily admitting that they erroneously applied Article 6252–7 to Gilmore, El Centro's trustee-defendants claim that we must accept that statute's mandate at face value and hold that because the statute did not apply to Gilmore as written he lacks standing to seek an injunction against enforcement of the statute.

Not only does this argument lack merit, it is inapposite. Whether Article 6252–7 applies to Gilmore as written is of no concern to us. We look only to the effect of the action of state officers applying a state statute under 28 U.S.C.A. § 2281. An allegation that the effect is violative of the Constitution confers jurisdiction upon a three-judge court.

■■■ We hold that for purposes of this action the trustees of El Centro are state officers within the meaning of 28 U.S.C.A. § 2281. Defendant El Centro admits in its uncontradicted pleadings that it is governed by the terms of Article 2815k, Texas Revised Civil Statutes. Section 8(1) of that statute states in part, "[t]he Junior Colleges * * * described in the foregoing Sections 1 through 8 are declared to be public corporations of the State of Texas * * *" The trustees and officers of such public corporations have been recognized, and we think properly so, as administrative officers of the State of Texas. Wichita

8. See n. 2, supra.

Falls Junior College District v. Battle, 5 Cir., 1953, 204 F.2d 632, 633.

However, a certain ambiguity arises from the above admission. Article 2815k, upon careful reading, indicates that the junior colleges to which it applies are those created by existing independent school districts. The statute specifically directs that such colleges are to be governed by the ordaining school district but may be divested by the district into the control of 15 appointed regents. El Centro is not administered by an independent school district or 15 regents but by 7 trustees. Consistent with control of a junior college by 7 trustees are the provisions of Section 20 of Article 2815h, Texas Revised Civil Statutes. That statute, unlike 2815k, makes specific reference to county junior colleges and provides for their creation and for determination of the trustees by popular vote of the residents of the county, the identical circumstance which gave rise to the creation of El Centro. That section further prescribes that the county junior college is to be designated a "body corporate", not a public corporation of the State of Texas.

■ Even assuming for purposes of argument that the trustees of El Centro are "county" officers, we are persuaded that under the facts of this case they must be held to answer as state officials. In determining the application of Section 2281 we "must have regard both to the nature of the legislative action which is assailed and to the function of the officer who is sought to be restrained * * *. Where a statute embodies a policy of state-wide concern, an officer, although chosen in a political subdivision and acting within that limited territory, may be charged with the duty of enforcing the statute in the interest of the state and not simply in the interest of the locality he serves." Spielman Motor Sales Co. v. Dodge, 1935, 295 U.S. 89, 94, 55 S.Ct. 678, 680, 79 L.Ed. 1322, 1325. The statute here under attack, Article 6252–7, is an attempt to establish a statewide policy, not a policy peculiar to the Dallas County Junior College District. Rorick v. Board of Commissioners of Everglades Drainage District, 1939, 307 U.S. 208, 212, 59 S.Ct. 808, 83 L.Ed. 1242, 1244. Neither were the trustees in the enforcement of the statute performing a local function. Wilentz v. Sovereign Camp, W. O. W., 1939, 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994; City of Cleveland v. United States, 1945, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274. They were enforcing a policy of statewide concern, i. e., that no public office shall be held in the absence of the execution of a non-subversive loyalty oath by the prospective officeholder. They were but a county cog in a statewide wheel.

El Centro admits it applied Article 6252–7 to Gilmore but contends that such application was erroneous, thereby defeasing him of standing to directly attack the statute.

■ We are unable to accept this position. Gilmore was aggrieved by Article 6252–7 when it was applied to him by El Centro. Inquiry concerning whether or not El Centro was authorized to apply the statute is irrelevant. Constantine v. Southwestern Louisiana Institute, W.D. La.1954, 120 F.Supp. 417. El Centro's action in exacting the oath is directly attributable to Article 6252–7. Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249.

### (2) Mootness

■ "[A federal] court is not empowered * * * to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue * * * before it." People of State of California v. San Pablo & T. R. R., 1893, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747, 749. As an individual Gilmore's continued employment at El Centro was contingent upon students registering for tuba instruction in the ensuing semesters. He had no continuing status at the college such as tenure. Even assuming

that the dismissal of Gilmore violated his constitutional civil rights

"[t]he sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured. All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to continue or recur. This established, it adds nothing that the calendar of years gone by might have been filled with transgressions. Even where relief is mandatory in form, it is to undo existing conditions, because otherwise they are likely to continue." United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978, 984.

El Centro, realizing that it erroneously applied the statute to Gilmore and the other instructors it had recruited in the fall of 1966, has discontinued exacting the oath from such instructors. Voluntary cessation of an alleged wrong does not, however, moot the controversy. United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; Walling v. Helmerich & Payne, 1944, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629; Gallagher v. Smiley, D.Colo.1967, 270 F.Supp. 86. Indeed, El Centro, by its own admission, will receive a considerable appropriation on September 1, 1967, from the Texas Legislature. Once in possession of state funds, the college will be statutorily obligated to require the oath.

We do not, therefore, have a question of a contingent controversy. Giles v. Harris, 1903, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909; District of Columbia v. Brooke, 1909, 214 U.S. 138, 29 S.Ct. 560, 52 L.Ed. 941; Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 57 S.Ct. 817, 81 L.Ed. 1143. The question is one of *when* the controversy will again arise.

Gilmore is qualified and ready to instruct, his failure to sign the oath being the only impediment to his so doing; El Centro continues to offer tuba classes to its students. In adhering to the classic pronouncement of Judge Learned Hand that "[t]o disarm the court [of power to enjoin] it must appear that there is no reasonable expectation that the wrong will be repeated," United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416, 448, we are compelled to retain this power and to hold that there is a reasonable expectation that the alleged wrong will be repeated. In Lawrence v. Hancock, S.D. W.Va.1948, 76 F.Supp. 1004, the plaintiff, at the opening of the swimming season in 1946 and again in 1947, tried to gain admission to the public pool in Montgomery, West Virginia. On both occasions he was turned away. He filed suit in federal court seeking a declaratory judgment and an injunction prohibiting the pool officials from denying him the privilege of swimming in the pool. The defendant sought to defeat the claim by asserting that the controversy was moot because the lease under which the city had rented the pool facilities to those who had refused the plaintiff the enjoyment thereof had expired prior to commencement of the suit, and there was no indication that the city would again lease the pool or that its use would again be denied the plaintiff. The court granted the injunction stating "[t]he pool still exists, although temporarily closed. *If* it is opened to the public again, the plaintiff will be entitled to the rights he asserts." 76 F.Supp. at 1010. So it is with Gilmore. *If* a student registers for tuba instruction at El Centro, we think it a reasonable expectation that the oath will be again required of him. Defendant El Centro has offered the court no assurance that it will not be required. United States v. W. T. Grant Co., supra. Gilmore is entitled to have his rights declared.

(3) Exhaustion of State Remedies

The doctrine that federal courts should abstain when plaintiffs have fail-

ed to exhaust their state remedies, Alabama Public Service Commission v. Southern Railway Co., 1950, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, has no application where the plaintiffs complain that they are being deprived of constitutional civil rights. Lane v. Wilson, 1939, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Browder v. Gayle, M.D.Ala.1956, 142 F.Supp. 707.

### (4) Class Representation

■ Questions have been raised in this suit regarding Gilmore's right to represent a class. In Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215, a Negro citizen brought a class action on behalf of Negro voters who had been denied the right to register to vote. The court held that she had the right to represent such class. In the same case, class representation was denied to a plaintiff who sought to represent all potential Negro candidates for office because the plaintiff was qualified to run, since she had paid her poll tax, whereas she purported to represent potential Negro candidates who had not paid their poll taxes, and who were thereby denied eligibility. In denying class representation, Judge John R. Brown said,

> Also, there was no showing that any other Negroes intended to run for municipal office in Ruleville. Thus, there was no class of potential Negro candidates, and even if there were, Mrs. Hamer could not represent it since she could have been a candidate had she chosen to do so. Without a class on the one hand or a proper representative on the other, a class action pursuant to Rule 23(a) must fail. It is elementary that "an individual suing in behalf of the members of a class must be a member of the class which he is supposed to represent." 358 F.2d, at 219.

In Thaxton v. Vaughan, 4 Cir., 1963, 321 F.2d 474, we find these words:

> Thus, the plaintiffs do not include any member of the class of persons against whom de facto discrimination is alleged to be practiced in the home. The absence of any direct evidence in

the record of the attitude of the home inmates is indicative of the inadequacy of the plaintiffs to represent this relatively narrow category within the broad racial group to which they belong. The spurious class action permissible under Rule 23(a) (3) is a procedural device to avoid multiplicity of suits, but care must be taken that the plaintiffs fairly and adequately represent the group for which they purport to speak. 321 F.2d at 476

These cases show the necessity for precise delineation of class representation. Armstrong v. Board of Ed. of City of Birmingham, N.D.Ala.1963, 220 F.Supp. 217; Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512. In Gantt v. Clemson Agr. College of S. C., 4 Cir. 1963, 320 F.2d 611, a Negro student sought enrollment in Clemson College and was refused. His case was accorded class representation in these words:

> Failure to rule that this was a class action and to grant appropriate injunctive relief was also error. * * * The action was brought by the plaintiff not only for his own benefit, but on behalf of other Negro citizens of South Carolina similarly situated. This procedure is entirely proper under Rule 23(a) (3) of the Federal Rules of Civil Procedure. Other Negroes have in the past sought admission to Clemson, and doubtless there are other qualified Negroes who will do so. These, as well as Gantt, are entitled to freedom from racially discriminatory policy. 320 F.2d at 614.

It is our opinion that Gilmore is a proper representative of prospective teachers seeking employment by tax-supported institutions of learning in Texas.

### b. Mantle

■ Plaintiff Thomas John Mantle is a student at the University of Texas, who sought part-time employment at the University's law school library. His employment was confirmed by the head librarian and the morning he commenced work, Mantle was directed to the person-

nel office at the University of Texas for completion of routine forms attendant to employment. Included among the papers presented to Mantle by representatives of the University's Personnel Department was the loyalty oath prescribed by Article 6252–7, Texas Rev.Civ.Stat. Plaintiff read the oath and the list of organizations designated as subversive by the Attorney General under Executive Order No. 10450 and 1st, 2nd, 3rd and 4th supplements thereto, and discovered that he was a member of an organization included on the list, to-wit, The Industrial Workers of the World. Moreover, since he joined that organization knowing its aims and purposes,[9] and since his only defense to membership under the oath would be a disclaimer of knowledge of the proscribed purposes of the organization, Mantle realized that he could not execute the oath and so advised the Personnel Office. He was "informed that he must execute the oath as a condition of his employment," and because of his refusal to do so, he was denied employment at the University of Texas. Since we are here according to Gilmore representation of prospective teachers in the interest of clear delineation of class representation, see Hamer v. Campbell, supra; Thaxton v. Vaughan, supra, we accord to Mantle representation of prospective employees of the State of Texas.

In this context, Mantle's standing to sue is unassailable. His employment at the law library having been confirmed, the conclusion is inescapable that he was well qualified for the position he sought. He was denied employment solely because his membership in the aforesaid organization made impossible the execution of the oath, a necessary incident of continued employment, thereby denying him employment otherwise available to him. That his salary would be paid in part by state funds is not in dispute. Plaintiff Mantle, therefore, has standing to bring this suit individually and as a representative of the class herein defined.

### c. Palter and Pullen

A federal court will not pass upon the validity of a state statute on complaint of those who fail to show injury by its enforcement. Tyler v. Judges of the Court of Registration, 1900, 179 U.S. 405, 21 S.Ct. 206, 45 L.Ed. 252; Hendrick v. State of Maryland, 1915, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed 385; Fairchild v. Hughes, 1922, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499; Commonwealth of Massachusetts v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

---

9. Mantle's depositional testimony, in pertinent part, was as follows:

"Q. Now, you just said you were very interested in Socialism, and I thought you said you were—and believed in it politically, and I thought you said that in the context of why you became a member of the Industrial Workers of the World.
A. Yes.
Q. Well, are you telling me that they advocate Socialism?
A. Yes, * * * their particular brand of Socialism.
Q. What is their particular brand of Socialism?
A. Labor syndicalism.
Q. What is labor syndicalism?
A. It is a particular belief that * * * I believe that basically it is that all of the working people in the world, if they were to unite in one union, then this union would be the—

become the dominant—I would say dominant force in society.
Q. In other words, it could overthrow all other governments, supplant all existing government authority? Just say 'Yes' or 'No'.
A. Yes.
Q. Does this organization believe in it? You have just said you believed in this—what was it? What was the term—'syndicalism'?
A. Yes.
Q. (By Mr. Shultz) At the time you joined the Industrial Workers of the World, did you know that this organization was on the list of subversive organizations compiled by the United States Attorney General?
A. Yes.
Q. You did?
A. Yes.
Q. You purposely joined it, knowing that?
A. I joined it knowing that, yes."

While plaintiffs Palter and Pullen were required to execute the oath upon being employed by the University of Texas in 1964 and 1965, respectively, it does not appear that their compliance was other than free and willing. Furthermore, it has not been shown that they will ever again be required to execute it. Article 6252–7 appears to require only one execution, and plaintiffs have failed to uncover the slightest threat of its being required of them again during their entire tenure.

Nevertheless, plaintiffs urge that the enforcement of Article 6252–7 requires them " * * * to conform to a standard of conduct which is not susceptible of accurate determination" and that they may not repudiate the oath. Again, however, plaintiffs' fears are entirely unjustified. The oath binds the maker to nothing but the existence of present and past facts. It does not bind him to avoid future associations or abstain from future conduct of any kind. We consider it to impose no prospective restraints of any character on plaintiffs' conduct.

In short, these two plaintiffs have failed to show that they have been injured by an enforcement of Article 6252–7. There must be some probability of invaded rights before injunctive muscles are flexed. The "ifs" of future statutory construction and its then application are too speculative and unpredictable to summon injunctive powers. Congress of Racial Equality v. Douglas, 5th Cir. 1963, 318 F.2d 95, 101. In contradistinction, an injunction was sanctioned in Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377, where the President of the University of Washington and its Board of Regents had given notice that all teaching personnel would be required to subscribe to the oath on pain of dismissal. However, we hold that on the evidence presented to this court plaintiffs Palter and Pullen have wholly failed to establish the necessary standing to attack the constitutionality of Article 6252–7. Since they have no present cause of action, they cannot qualify as representatives of any class.

### d. Kahn

We granted plaintiff Kahn's motion to intervene because his claim presented questions of law and fact in common with the other plaintiffs in this cause. Federal Rules of Civil Procedure, Rule 24, U.S.C.A. The intervention of Kahn, if not compelled, is at least justifiably permissive under the liberalized aegis of Rule 28. Atlantis Development Corp., Ltd. v. United States, 5th Cir., June 12, 1967, 379 F.2d 818.

His standing as a plaintiff in this suit cannot be seriously challenged. Upon the evidence it is clear that he was tendered a *bona fide* offer of employment as a professor of psychology by the University of Texas Board of Regents which he intends to accept, provided that his execution of the loyalty oath required by Article 6252–7 is not made a condition of his employment. The Board of Regents concede that Kahn's employment is to be conditioned upon his signing the loyalty oath.

Obviously, the enforcement of Article 6252–7 by the State of Texas is effectively denying plaintiff Kahn the employment he otherwise would have. His injury is sufficient to provide standing to assert the unconstitutionality of that statute in this court.

Plaintiff Kahn would bring this action individually and as a representative of a class of professors, teachers, and other employees of state-supported educational institutions. However, we have concluded that, like Gilmore, he may properly represent only prospective professors and teachers seeking employment in educational institutions supported by the State of Texas. See Hamer v. Campbell, supra, and Thaxton v. Vaughan, supra.

### e. Cunningham

We need not decide Cunningham's standing as a plaintiff in this cause at the time suit was instigated. Evidence submitted on unchallenged affidavit subsequent to oral argument shows that he is not now and at no time after the conclusion of the first six

weeks of the 1967 Summer Session was an enrolled student at the University of Texas. Furthermore, it is not contended that he contemplates future enrollment in state-supported schools in Texas.

Consequently, we hold that upon the evidence the enforcement of Article 2908b threatens no injury to him. He does not possess the standing necessary to entitle him to assert the unconstitutionality of that state. United States v. Oregon State Medical Society, supra; Hamer v. Campbell, supra.

### VENUE and JOINDER

As discussed supra, the claim alleged by plaintiff Gilmore against the defendant El Centro is, for venue purposes, properly before this Court. There is, therefore, proper venue in the Northern District of Texas as to the Board of Regents of the University of Texas, the State Treasurer, and the Comptroller if these parties have been properly joined as defendants. 28 U.S.C.A. § 1392(a).[10]

Rule 20, Fed.Rules Civil Procedure, permits joinder of plaintiffs or defendants whenever there is a common question of law or fact and the claims involved arise out of a single transaction, occurrence, or series of transactions or occurrences.[11]

Since joinder of parties is dependent on the concepts of "common question of law or fact" *and* "same transaction", these tests must both be met in order for us to hold, as we do, that there is proper joinder of defendants in the case at bar. Music Merchants v. Capitol Records, E.D.N.Y.1957, 20 F.R.D. 462; Philadelphia Dressed Beef Co. v. Wilson and Co., E.D.Pa.1956, 19 F.R.D. 198. The exaction of the Article 6252-7 oath from each of the respective plaintiffs presents a question of law common to all. Eastern Fireproofing Co., Inc. v. United States Gypsum Co., D.Mass.1958, 160 F.Supp. 580, 581.

In United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717, the suit was against the State of Mississippi, its state election commissioners and six county voter registrars, alleging the hampering of the voting rights of Negro citizens of the state. In apposition to our case, Justice Black, speaking for the Supreme Court, said:

The District Court said that the complaint improperly attempted to hold the six county registrars jointly liable for what amounted to nothing more than individual torts committed by them separately with reference to separate applicants. For this reason apparently it would have held the venue improper as to the three registrars who live outside the Southern District of Mississippi, and a fourth who lived in a different division of the Southern

---

10. 28 U.S.C.A. § 1392 (a) provides:
 "Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."
 Commenting on § 1392 (a), Professor Moore observed:
 "As an exception to the general venue statute, it was Congress' intent that § 1392 (a) preserve statewide venue in actions where multiple defendants reside in the same state, but in different districts."
 1 Moore's Federal Practice § 0.143 (1965).

11. "Rule 20. Permissive Joinder of Parties.
 Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

District, and it would have ordered that each of the other two registrars be sued alone. But the complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of their right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure * * *. These registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which is dependent to a large extent upon 'question[s] of law or fact common to all of them.' Since joinder of the registrars in one suit was proper, the argument that venue as to some of them was not properly laid is also without merit. 28 U.S.C. §§ 1392(a), 1393(b) (1958 ed.). 380 U.S. at 142, 85 S.Ct. at 815, 13 L.Ed.2d at 726.

In the case at bar, the series of occurrences from which whatever right to relief there may be arises is the statewide policy of conditioning state employment upon the exaction of the loyalty oath detailed in Article 6252–7. Both tests having been met, we hold that joinder of defendants is permissible under Rule 20, Federal Rules of Civil Proc. and, therefore, that venue is properly laid in the Northern District of Texas.[12]

### THE OATH

 The exaction of formalized fealty is a diminishing phenomena in our girding against real and substantial subversion. This case, however, presents a confrontation of the putative protection of such oaths with our cherished First Amendment freedoms. While there can be no compromise with subversion, concomitantly, there can be no fettering of the exploration in the realm of ideas. Exposure of the false and the affirmation of truth are both ceded in the free range of association and expression. These are among the self-evident truths that history and experience have not palled. Suppression will not kill nefarious ideas, only exposure will. Our nation can survive occasional falsehood. Its permanence and vibrancy as a democracy demand that freedom which perchance permits the false to live for a day. Attempted suppression sometimes fortifies the false with undeserved dignity. Silence is often more contemptuous of its falsity.

Plaintiffs have challenged the constitutionality of Section 1 of Article 6252–7 on grounds (1) that its enforcement denies them the freedom of association guaranteed by the Fourteenth Amendment against state curtailment and (2) that it is unconstitutionally vague and uncertain.

Section 1, in effect, provides that no state funds may be paid to any person as wages who has not executed an oath attesting (1) that he is not and never has been a member of the communist party; (2) that he is not and during the past five years has not been a member of an organization listed by the Attorney General of the United States pursuant to Executive Order No. 10450, December 9, 1953, and first, second, third and fourth supplements thereto, or if he was a member during such period, he may explain that he did not have knowledge of the proscribed purposes of the organization at the time he joined or during the period he was a member; and (3) that he is not, and during the past five years has not been, a member of any organization registered under the Federal Internal Security Act of 1950 or, if he was a member during such period, that he did not have knowledge of the proscribed purposes of the organization at the time he joined or during the period he was a member.

It is at once evident that an individual seeking employment with the State of Texas must be summarily rejected if he

---

12. At oral argument, defendants waived their motion to sever and transfer under 28 U.S.C.A. § 1404 (a).

refuses to take the prescribed oath. It is equally apparent that an applicant who has ever been a member of the Communist Party or who has during the past five years been a member of a designated organization with knowledge of the unlawful purposes of the organization, must refuse to take the oath in order to avoid prosecution for perjury. The inevitable result of this statutory scheme is that all otherwise qualified persons who are or have been members of the communist party and/or other designated organizations with knowledge of their unlawful purposes are ineligible for state employment solely because of such membership.

The question we are called upon to decide is whether disqualification from state employment solely on grounds of present or past membership in such organizations is compatible with First Amendment liberties guaranteed against state infringement by the Fourteenth Amendment.

 We start with the premise that a state cannot condition an individual's privilege of public employment on his non-participation in conduct which, under the Constitution, is protected from direct interference by the state. In Sherbert v. Verner, 1963, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965, 971, the Supreme Court pointed out that "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions on a benefit or privilege." And in Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed. 2d 629, the Court denounced the assumption of Adler v. Board of Education of City of New York, 1953, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, that the employment of teachers could be conditioned on their giving up constitutional rights which could not be directly curtailed. If membership in the organization designated by Section 1 of Article 6252–7 constitutes activity which the state may not directly attaint, then it must follow that the state of Texas has no right to condition employment on non-

membership. We proceed to a determination whether such membership is constitutionally protected activity.

 The First Amendment embodies a revered freedom of association which is no more subject to state curtailment than any other First Amendment right. The Supreme Court has repeatedly defended the individual's freedom to engage in associations of his choice for the advancement of his own beliefs and ideas. See National Association for Advancement of Colored People v. State of Alabama, ex rel. Patterson, 1958, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488; National Association for Advancement of Colored People v. State of Alabama ex rel. Flowers, 1964, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325; Elfbrandt v. Russell, 1966, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321; Keyishian v. Board of Regents, supra. That freedom is never more wisely invoked than in cases where the free exchange of thoughts and ideas among members of the academic community is threatened. Shelton v. Tucker, 1960, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231; Sweezy v. State of New Hampshire, 1957, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311.

 Of course, the First Amendment rights are not absolute. But it is only when the exercise of such rights threatens a clear and present danger to some substantial state interest that the state is justified in curtailing them. Defendants contend that the state has a vital interest in protecting itself from internal weakening by keeping subversives out of the government. We agree. However, it is another question whether the procedures devised by the State of Texas for protecting that interest can withstand constitutional attack.

 We believe the Supreme Court has made it abundantly clear that the mere membership of an individual, knowing or otherwise, in any of the organizations designated by Article 6252–7 does not constitute him a sufficient threat to state or national security to warrant arbitrary exclusion from state employment.

■ In Elfbrandt v. Russell, supra, the Court struck down a statutorily required oath which bound state employees not to become knowing members of designated "subversive" organizations. Employees who became members, without more, were subjected to prosecution for perjury and automatic dismissal. Justice Douglas, speaking for the majority, said:

Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees. Laws such as this which are not restricted in scope to those who join with the "specific intent" to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization. 384 U.S. at 17, 86 S.Ct. at 1241, 16 L.Ed.2d at 325.

We believe that *Elfbrandt* states the principle which controls our decision: "A law which applies to membership without the 'specific intent' to further the illegal aims of the organization infringes unnecessarily on protected freedoms. It rests on the doctrine of 'guilt by association' which has no place here." 384 U.S. at 19, 86 S.Ct. at 1242, 16 L.Ed.2d at 326.

■ Oaths in support of the government are not abhorrent to the Constitution. Indeed, the Constitution provides one.[13] The vice of the oath condemned here is that it equates membership or association with non-allegiance. A statute which automatically disqualifies applicants on the basis of membership alone ensnares the innocent with the guilty. While such membership may furnish a basis for further inquiry into an applicant's present or past activities, it does not in itself constitute a threat to the state. An individual is entitled to be judged by his own conduct, not that of his associates. To the extent that Article 6252-7 disqualifies passive or dissenting members of such organizations, it is too broadly drawn. Even as to ignorant members, the statutory exculpation,[14] if any, is vague in its implementation. See Speiser v. Randall, 1958, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460, with contemporary elucidation by Keyishian v. Board of Regents, supra.

By the terms of the Arizona statute construed in *Elfbrandt* the result of becoming a member of a proscribed organization was criminal punishment, whereas the only consequence of membership under Article 6252-7 is disqualification. But any doubts this court might have had concerning the applicability of the quoted portions of the *Elfbrandt* opinion to the case at bar are completely dispelled by the recently decided case of Keyishian v. Board of Regents, supra.

13. U.S.Const. Art. II, Sec. 1.
Cf. Gerende v. Baltimore City Board of Supervisors of Elections, 1951, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745, wherein the Supreme Court upheld a Maryland state loyalty oath as constitutionally permissible. Relying on *Gerende*, a 3-judge court in Maryland upheld a similar oath (modified to conform to *Elfbrandt*) in Whitehill v. Elkins, D.Md., 1966, 258 F.Supp. 589, prob. juris. noted, 1967, 386 U.S. 906, 87 S.Ct. 852, 17 L.Ed.2d 781.

14. Art. 6252-7:
 * * * * *
2. * * * or, in the event that the affiant has during such five year period been a member of any such organization association, movement, group or combination, he shall state its name, shall state in detail the circumstances which led him to join it, and shall state that, at the time when he joined and throughout the period during which he was a member, he did not know that its purposes were the purposes which the Attorney General of the United States has designated; and
3. * * * or, in the event that the affiant has during such five year period been a member of any such organization, he shall state its name, shall state in detail the circumstances which led him to join it, and shall state that, at the time when he joined it and throughout the period during which he was a member, he did not know that its purpose was to further the goals of the Communist Party or that it was controlled by the Communist Party.

In *Keyishian,* faculty members of the State University of New York challenged the constitutionality of certain sections of the New York Education Law and New York Civil Service Law on the same grounds upon which these plaintiffs here launch their attack on Article 6252–7. Section 105(1) (c) of the Civil Service Law, McKinney's Consol. Laws, c. 7, and Section 3022(2) of the Education Law, McKinney's Consol. Laws, c. 16, made membership in proscribed organizations to be designated by the Board of Regents and/or membership in the communist party prima facie evidence of disqualification for appointment or retention of any position in New York public schools.

The New York statutory scheme did not require the execution of an oath, and no penalties other than disqualification resulted from membership in the designated organizations. Nevertheless, the Court adopted the rationale and language of *Elfbrandt* without hesitation. Accordingly, the fact that by the terms of Article 6252–7 membership results only in disqualification does not render *Elfbrandt* any the less controlling here; it merely emphasizes the applicability of *Keyishian.*

It may be observed that the Texas statute operates only to deny initial employment because of present or past associations, whereas the New York scheme operated to disqualify employees for proscribed associations at any time during their tenure. Article 6252–7 appears to require no sanctions for membership which is undertaken following the execution of the prescribed oath at the beginning of the employment relationship. However, we do not consider this distinguishment to affect our decision. There can be little difference in principle between discharging one because of his constitutionally protected associations and refusing to hire him for the same reasons. The result is an unconstitutional deprivation in either case.

We find that Section 1 of Article 6252–7 suffers from the same "impermissible overbreadth" which afflicted the statutory provisions struck down in *Elfbrandt* and *Keyishian.* While the statute may operate to denigrate associations not under the protective umbrella of the Constitution, it also condemns associations which are. For that reason it cannot stand.

Our finding that Section 1 of Article 6252–7 is constitutionally infirm pretermits a discussion of whether it is unconstitutionally vague and uncertain.

Counsel for the plaintiffs shall submit, on notice to the defendants, an appropriate order.