

# THE ATTORNEY GENERAL
## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

June 11, 1969

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas

Opinion No. M-417

Re: Whether the State Board
of Education may require a
loyalty oath, as prescribed
in Sections 1, 2 and 3 of
Article 6252-7, V.C.S., of
authors bidding for state
adoption and purchase of
textbooks and teaching
aids?

Dear Mr. Edgar:

You have asked whether the oath, required by Article 6252-7, Sections 1, 2, and 3, Vernon's Civil Statutes, as a condition precedent to consideration of any textbook, is constitutionally permissible. Paragraph 23 of the proposed Proclamation of the State Board of Education, advertising for bids on textbooks, is in accord with Article 6252-7, Section 3, and reads as follows:

"Authors of all textbooks and teaching aids
offered for adoption under this proclamation shall
sign the non-subversive oath in compliance with the
provisions of Article 6252-7, Revised Civil Statutes
of Texas. The bid of a publisher will not be con-
sidered unless there has been compliance with the
terms of the foregoing statute."

It is our opinion that Article 6252-7, Sections 1, 2, and 3, violates several provisions of both the State and Federal Con- stitutions; therefore, the Board of Education may not require the prescribed oath as a condition precedent to consideration of a textbook.

Article 6252-7, Section 3, requires that the State Board of Education "neither adopt nor purchase any textbook for use in the schools of this State unless and until the author of such textbook files with the Board an oath or affirmation reciting the matters set forth in Subdivisions 1, 2 and 3 of Section 1" of the statute.

Section 1 of Article 6252-7 provides that "no funds of the State of Texas shall be paid to any person ... unless and until such person has filed ... an oath or affirmation stating:

"1. That the affiant is not, and has never been, a member of the Communist Party. (The term 'Communist Party' as used herein means any organization which (a) is substantially directed, dominated or controlled by the Union of Soviet Socialistic Republics, or its satellites, or which (b) seeks to overthrow the Government of the United States, or of any State, by force, violence or any other unlawful means); and

"2. That the affiant is not, and, during the preceding five year period, has not been a member of any organization, association, movement, group or combination which the Attorney General of the United States, acting pursuant to Executive Order No. 9835, March 21, 1947, 12 Federal Register 1935, has designated as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of Government of the United States by unconstitutional means; or, in the event that the affiant has during such five year period been a member of any such organization, association, movement, group or combination, he shall state its name, shall state in detail the circumstances which led him to join it, and shall state that, at the time when he joined and throughout the period during which

he was a member, he did not know that its pur-
poses were the purposes which the Attorney General
of the United States has designated; and

"3. That the affiant is not, and, during
the preceding five year period, has not been, a
member of any 'Communist Political Organization'
or 'Communist Front Organization' registered
under the Federal Internal Security Act of 1950
(50 U.S.C.A., sec. 781, et seq.) or required to
so register under said Act by final order of the
Federal Subversive Activities Control Board; or,
in the event that the affiant has during such
five year period been a member of any such
organization, he shall state its name, shall state
in detail the circumstances which led him to join
it, and shall state that, at the time when he
joined it and throughout the period during which
he was a member, he did not know that its purpose
was to further the goals of the Communist Party
or that it was controlled by the Communist Party."

The Federal court in Gilmore v. James, 274 F.Supp. 75
(N.D. Tex. 1967) affirmed, 389 U.S. 572, held Article 6252-7,
Section 1, unconstitutional. The Gilmore case involved ex-
traction of the oath as a condition precedent to employment.
The flaw in the oath provided by Article 6252-7 is stated in
the following excerpt from the opinion in the Gilmore case, 274 F.
Supp. at 92:

"Oaths in support of the government are not abhorrent
to the Constitution. Indeed, the Constitution provides
one. The vice of the oath condemned here is that it
equates membership or association with non-allegiance.
A statute which automatically disqualifies applicants on
the basis of membership alone ensnares the innocent with
the guilty. While such membership may furnish a basis for
further inquiry into an applicant's present or past
activities, it does not in itself constitute a threat
to the state. An individual is entitled to be judged by
his own conduct, not that of his associates. To the ex-
tent that Article 6252-7 disqualifies passive or dis-
senting members of such organizations, it is too broadly

drawn. Even as to ignorant members, the statutory exculpation, if any, is vague in its implementation. See Speiser v. Randall, 1958, 357 U.S. 513, 78 S.Ct. 1332 2 L.Ed.2d 1460, with contemporary elucidation by Keyishian v. Board of Regents ..." (385 U.S. 589,607, 1967)

The individual who writes a book possesses the same constitutional rights possessed by the individual seeking public employment. The fact that Article 6252-7, Section 3, imposes the oath as a condition precedent to consideration or purchase of an individual's written work does not furnish any basis for distinguishing the holding in Gilmore v. James, supra.

Article 6252-7, Section 3, presents an additional constitutional question not present in Gilmore v. James, supra.

In Gilmore the question is not whether any oath may be extracted from a public employee, but is whether the particular oath may be extracted as a condition precedent to employment. There is some relationship between the motive for the oath and the desired and permissible objective. The motive is to bar certain classes of people from public employment and the desirable and permissible objective is to prevent subversion in government. The fact that the oath used is overly broad and therefore violative of constitutional rights does not obscure the fact that a rational connection between means and end does exist.

Section 3 of Article 6252-7 presents the additional question whether any oath may be required as a condition precedent to consideration of a book. It is doubtful that there is any reasonable connection between means and end in this context. A book may be judged on its own merit regardless of the associations of its author. Two cases by the United States Supreme Court indicate that using an oath to determine whether a person can qualify for a right of citizenship is an unfair method of classification, because it places on the claimant of the right the burden to prove that he is a proper person to exercise the right. The case of Speiser v. Randall, 357 U.S. 513 (1958), presents a

situation closely analogous to the problem presented by Article 6252-7, Section 3. In Speiser, the thing desired was a state property tax exemption provided veterans of World War II. In order to obtain the exemption, the State required a loyalty oath reading as follows, 357 U.S. at 515:

> "I do not advocate the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means, nor advocate the support of a foreign Government against the United States in event of hositilities."

Exemption was denied solely for refusal to execute the oath. The Supreme Court held this to restrict free speech without due process of law because it placed on the exemption claimant the burden of proving he was a proper person to obtain the exemption.

The Court observed in Speiser, 357 U.S. at 518:

> "It cannot be gainsaid that a discriminatory denial of a tax exemption for engaging in speech is a limitation on free speech."

Article 6252-7, Section 3, places on the author of a textbook the burden of proving he is a proper and loyal person in order to have his books considered by the Board of Education. According to the above cited cases, this is an abridgement of the First Amendment rights of free speech, press, and assembly without due process of law.

A companion case to Speiser involving the same problem is First Unitarian Church v. County of Los Angeles, 357 U.S. 545 (1958). In both Speiser and the First Unitarian Church cases the problem concerns not so much the oath itself as the use being made of the oath.

It is the opinion of this office that the oath required by Article 6252-7 is unconstitutional as a condition precedent to

consideration of a book for the same reasons it was held un-unconstitutional as a condition precedent to employment in <u>Gilmore v. James,</u> supra.

It is also the opinion of this office that the requirements of Section 3 of Article 6252-7 provide for an unconstitutional <u>use</u> of the oath for the reasons set out in <u>Speiser v. Randall</u>, supra.

You have indicated in connection with your request some concern as to the scope of valid inquiry which may be made concerning the authors of the textbooks under consideration in the event no loyalty oath may be required. Under Article 2675b, Vernon's Civil Statutes, the duties previously devolving by law upon the "State Textbook Commission" are now to be performed by the "State Board of Education." The Board shall appoint annually a Textbook Committee, whose duty it is to examine all books submitted for adoption and to make written recommendations to the Board relative to the "teachable value of the books." The Board is vested with the broad discretionary authority to adopt those textbooks found to be most suitable under any reasonable plan or method deemed best by it. Cf: Attorney General Opinions No. V-407 (1947) and V-417 (1947). The State Board of Education may adopt policies, rules, and regulations for carrying out its duties. Article 2654-3, V.C.S.

In the selection of textbooks, the author's background and qualifications to write a particular textbook may be a pertinent and legitimate matter of inquiry. <u>Konigsberg v. State Bar</u>, 366 U.S. 36 (1961) distinguishing <u>Speiser v. Randall,</u> supra, pp 54-56, from the cases involving "no attempt directly to control speech but rather to protect from an evil shown to be grave, some interest clearly within the sphere of governmental concern." Such an inquiry, whether by questionnaire or administrative interview or hearing, is not prohibited by the Constitution or statute. The author should be accorded the right to answer, to explain his answer, or make such qualifications thereto as his conscience demands, including the right to refuse to answer. Consideration by the Board of such matters, along with other factors which may bear upon the author's qualifications to write an objective and informed work, in the author's particular

field of expertise, as well as the work itself, are permitted. The State's right to demand a loyalty oath as a condition precedent to consideration of the textbook is the prohibited act which the foregoing decisions have outlawed.

In the Konigsberg case, supra, an applicant for admission to the California Bar refused to answer any questions relating to his membership in the Communist Party. The Supreme Court found that this matter did bear upon the applicant's qualifications and upheld the action of the court in refusing to certify him on the ground that his refusal to answer had obstructed a full investigation into his qualifications and such inquiry was constitutionally permissible.

Inquiry which showed reasonable cause to believe proceeds from textbook royalties were being used to support illegal activity, would probably permit refusal to purchase the book, regardless of the merit of the book.

The policies, rules, and regulations in the selection of state textbooks to be used have been left to the Board's discretion. Our courts will uphold the action of the State Board of Education so long as its rules do not contravene any applicable laws or the Constitution. Adkins v. Rogers, 303 S.W.2d 820 (Tex.Civ. App. 1957, error ref., n.r.e.)

## S U M M A R Y

The State Board of Education may not require the loyalty oath prescribed by Article 6252-7, Section 3, Vernon's Civil Statutes, as a prerequisite to consideration of a textbook by the Board of Education. However, the State Board of Education is not prohibited from making reasonable inquiry into the background qualifications of an author to write a particular textbook, whenever pertinent, in reaching its

Honorable J. W. Edgar, page 8 (M-417)

> ultimate discretionary determination of which
> textbooks are the most suitable for adoption.
>
> Yours very truly,
>
> CRAWFORD C. MARTIN
> Attorney General of Texas

Prepared by Samuel D. McDaniel
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

Sally Phillips
Bob Davis
Tom Bullington
James Quick

W. V. GEPPERT
Staff Legal Assistant

HAWTHORNE PHILLIPS
Executive Assistant