97 So.2d 105 (1957)
STATE of Florida, Appellant,
v.
Frank DIEZ, Appellee (two cases).
Supreme Court of Florida.
September 18, 1957.
Rehearing Denied October 17, 1957.
Richard W. Ervin, Atty. Gen., Jos. P. Manners and Richard J. Brooks, Asst. Attys. Gen., for appellant.
William C. Pierce and Manuel M. Garcia, Tampa, for appellee.
THOMAS, Justice.
Two informations were filed in the Criminal Court of Record of Hillsborough County charging Frank Diez with perjury. *106 In one it was alleged that the defendant being "required by law to take an oath in a non-judicial proceeding and * * * being under oath then and there * * * administered to him by one Ralph Fernandez who was duly authorized to take acknowledgment of instruments for public record * * *, did wilfully, knowingly, intentionally, corruptly and falsely swear * * * `I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party,'" but to the contrary the defendant had "lent his aid, support, advice, counsel or influence to the Communist Party * * *." It was averred that the statement was material because the oath containing it was a prerequisite to the employment of the defendant by the Florida State Racing Commission, and that the defendant knew the statement was false when he made it.
The second information is identical with the first except that the statement set out was alleged to have been made about a year later.
The defendant moved to quash both informations on twenty-three grounds and his motions were granted. The state then appealed so the defendant is now appellee.
Under one ground it was argued by appellee, apparently with success, that by federal law the field of sedition legislation had been preempted by the federal government and, therefore, the statutes relied on were no longer valid. Secs. 876.05 through 876.10, Florida Statutes 1953, and F.S.A.
We have commented that the appellee argued this particular point with apparent success because the orders entered by the judge simply granted the motions to quash without specifying what grounds of the twenty-three presented by the movant were considered to have been well taken. However, this point is argued here both by appellant and appellee so we consider that it is one which we should properly decide.
The Attorney General contends that a loyalty oath such as appellee was required to take does not fall in the same category as sedition, one being a matter of allegiance to the government, the other a matter of commission of the crime of treason, or sedition.
We are immediately concerned with the first of the statutes, Sec. 876.05, supra, which provides, in brief, that all persons in the service of the state, as well as all candidates for public office, shall subscribe to a certain oath, the contents of which relevant to this controversy are: That the affiant is not "a member of the Communist Party," and "[has] not and will not lend * * * aid, support, advice, counsel or influence to the Communist Party * * *."
In the last of the cited statutes, Sec. 876.10, supra, it is provided that a person "guilty" of making a false statement in the oath shall be "guilty" of perjury. This is the statute upon which the present prosecutions are based. Sec. 837.01, Florida Statutes 1953, and F.S.A.
The appellee asserts that it is only with the part of the oath: "I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party" that this court need now be concerned, and he contends that aside from the unconstitutionality of the particular statute, the legislature never intended that it should have a retroactive effect. Also, he represents that the state concedes these to be the only questions to be resolved by this court and he takes the position that an affirmative answer to either must result in an affirmance.
As we understand the record, the ruling constituted a decision that Sec. 876.05, supra, was unconstitutional. We proceed to an examination of the briefs of the Attorney General and the appellee dealing with (1) the preemption of the field by the federal government, (2) the intention of the legislature with reference to the retrospective effect of the act, and (3) the invalidity of the law because of the absence of any requirement of a statement in *107 the oath that the affiant consciously gave aid, support, advice, counsel or influence to the Communist Party.
Appellee argues that by federal law the government of the United States has nullified "sedition legislation by the States, including the instant Act," to quote from appellee's brief. Chapter 25046, Laws of Florida, Acts of 1949, F.S.A. § 876.05 et seq.
At the outset the appellee draws the attention of this court to three federal laws having to do with the general subjects of sedition and communism. One of these is the so-called Smith Act originally passed in 1940 and amended in 1948, 18 U.S.C.A. § 2385. Under this law anyone who abets the overthrow of the government of the United States or any state by violence may be fined $10,000 or imprisoned for not more than 10 years, or both, and shall be ineligible for employment by the United States for five years following his conviction.
In 1950 the Internal Security Act was passed, 50 U.S.C.A. § 781 et seq. It carried a preface about the world-wide communist movement calculated to accomplish, by treachery and infiltration into government and other groups, a communist totalitarian dictatorship. This is a comprehensive law designed to curb the insidious communistic canker.
In 1954 the Congress enacted the Communist Control Act, 50 U.S.C.A. § 841 et seq. In it the Congress declared that although the Communist Party was ostensibly a political party, it was in truth an instrumentality designed to work the overthrow of the United States Government and to deny the liberties guaranteed by the Constitution and that the Communist Party should be outlawed.
Two state laws have been passed dealing with the general subject of communism and one with loyalty to the government as a qualification for employment by the state. The earliest of these was Chapter 20216, Laws of Florida, Acts of 1941, F.S.A. § 876.01 et seq., outlawing in the State of Florida the Communist Party, the Bund, and all groups, organizations or individuals seeking to overthrow the government of the United States by force. Such was the title, and in the body of the act there is reference to the assassination of officials of the state as well as the federal government. In this act criminal anarchy, criminal communism, criminal nazi-ism and criminal fascism were denounced.
Then followed the enactment of Chapter 25046, supra, one section of which, now 876.05, supra, we are now considering.
Afterward the legislature passed Chapter 28221, Laws of Florida, Acts of 1953, F.S.A. § 876.22 et seq., condemning communism and its kind and all their works. Incidentally, it was provided in this act, that it should be felonious "knowingly and willfully" to engage in subversive activities. The significance of the language we quote will become apparent when we presently discuss the averments of the informations filed against the appellee.
The pertinent and existing parts of these three acts are now found in Chapter 876, Florida Statutes 1955, and F.S.A.
Reverting to appellee's argument, he claims the issue here is whether or not supersession has resulted from the federal enactments, that is, whether or not the state laws have become ineffectual because federal acts now exclusively govern. To support the position, the appellee refers to the decision of the Supreme Court of the United States in Commonwealth of Pennsylvania v. Nelson, 1956, 350 U.S. 497, 76 S.Ct. 477, 483, 100 L.Ed. 640, in which it was held that the National Congress by the three federal acts we have mentioned showed a purpose of taking over entirely the field of sedition legislation, and that a state sedition statute had been superseded even though it purported to supplement federal law.
It was the theory of the opinion that subversive activities should be viewed *108 from a central point so that in each instance it might be considered whether or not the activity was part of a pattern that could only be dealt with successfully by an agency that could gather all the information and treat of it as a problem affecting the security of the whole country. There was reference to the number and diversity of state statutes and to the ineffectiveness of attacking a local problem that might well have a kinship with subversive activity elsewhere in the United States. In the opinion is the significant statement: "And our attention has not been called to any case where the prosecution has been successfully directed against an attempt to destroy state or local government." It is important to note here that in the case of Commonwealth of Pennsylvania v. Nelson, supra, the Supreme Court of the United States was reviewing the prosecution in a state court of a person charged with sedition against the government of the United States. The law alleged to have been violated is substantially the same as Chapter 28221, supra.
It seems to this court that when the reasoning in the opinion is borne in mind and the mischief that that court thought would result from numerous and varied prosecutions for sedition in many states under dissimilar statutes is considered, there is no occasion to strike down the only section of the statutes with which, as appellee contends, we are concerned. If all the statutes of the state we have cited are considered as a whole it might logically be argued that the legislature attempted to deal with the general subject of sedition but the legislature was also dealing with loyalty to the state government as a prerequisite to state employment, and we must remember that we are not passing upon any prosecution for sedition, or any violation that should be left to the federal government which could conceivably handle it more effectively and more intelligently because of accumulated information or evidence of other acts of sedition in other places in the domain.
The appellee was required, in order to serve the state and be compensated for his services, to execute an oath of loyalty not only to the government of the United States but also the government of the State of Florida. Under the Constitution of the State of Florida every officer of the state must, before entering upon his duties, swear that he will support, protect, and defend not only the constitution and government of the state but also the constitution and government of the United States. Sec. 2, Art. XVI, Constitution of the State of Florida, F.S.A. Certainly no one could say that this obligation to remain loyal to both governments transgressed upon the power exercised by the federal government to take over the control and suppression of sedition in the United States.
So far as the prospective effect of the oath is concerned, we are unable to put in different categories the oath of officers and the oath of an employee that he will not lend aid, support, advice, counsel, or influence to an organization that has been condemned by both governments. And we cannot understand how the making of such an oath a condition precedent to state service would interfere in the slightest degree with the operation of the federal government against those who become so disloyal as to engage in sedition. It could be more logically argued that by keeping out of state government those persons who might prove disloyal, the federal government would be advantaged.
Apropos of this thought we quote from the opinion in Garner v. Board of Public Works of City of Los Angeles, infra:
"We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitablity for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired *109 into in determining fitness for high and low positions in private industry and are not less relevant in public employment." [341 U.S. 716, 71 S.Ct. 912.]
Up to this point we have treated of the question whether or not the statutes requiring loyalty oaths have become ineffectual because of the opinion of the Supreme Court of the United States in Commonwealth of Pennsylvania v. Nelson, supra. We think they have not.
We now turn to the contention of the appellee that Sec. 876.05, supra, was not intended to have any retrospective effect. As we understand his position, he asserts that this is discernible from an examination of the journals of the House of Representatives and the Senate where the progress of the bill was recorded and he says that such lack of intent is reflected in the finished product which is ungrammatical as a result of careless amending in an effort to eliminate language which would give the law a retrospective application. We cannot accept this interpretation. We have carefully studied the brief of appellee and we have been unable to trace the history of the legislation to the conclusion that by inaccurate amendment the legislature gave the law a retrospective effect that was not intended.
We think the pertinent clause, despite its ungrammatical construction was meant to apply retrospectively and that it should be read as if it had been written "I have not lent and will not lend" comfort to communism. We decide that the legislature did not purpose to require only that the employee swear that he would not, thereafter, consort with communists.
The appellee insists that if it be determined that the law was intended to operate retrospectively, it is then unconstitutional because no limitation is placed on the period, extending backward, during which the affiant may have aided the communist cause. We do not consider this position sound. The purpose of the oath is not only to secure loyalty in the future, but to furnish information to the employer, the state, about the applicant's background, experience and former connections in order better to determine his fitness for the position he seeks, and certainly past disloyal conduct of a prospective employee, or want of it, would shed light on the probability of his remaining steadfast in his loyalty to the government. We think the question asked was proper and relevant, and the information sought was material. The answer being material, the affiant became subject to prosecution for perjury if he answered falsely.
We are immediately concerned neither with the right of the appellee to the position despite any contribution to communism in the remote past, nor the right of the state to decline employment because of the refusal of an applicant to take the oath, but only with the truth or falsity of the representation the appellee made. We conclude that he was properly asked about former relationship with the Communist Party and that when he answered, he was bound to answer truthfully.
We go to the last point we consider it necessary to discuss and resolve. Under informations framed like the ones here under attack, it would be quite possible for a person unknowingly to assist the Communist Party, to desist when he found he was doing so, to take the oath innocently, thinking he had corrected his mistake, and then to face prosecution on the bare facts that he swore he had not assisted the party and that actually, albeit unknowingly, he had given such advice, counsel and so on. It should be remembered that this part of the oath does not relate to membership in the party, but to support given the party by one who may or may not have been a member. A preceding clause in the oath consists of the plain statement: "I am not a member of the Communist Party." (Italics supplied.) Considering the two clauses in their order, an employee may swear that he is not *110 a member of the outlaw organization and follow it with the statement he has never lent aid to it and later face prosecution because the latter statement was untrue even though he may have entertained no intention to give such support and withdrew it when he discovered his error.
In Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 218, 97 L.Ed. 216, the Supreme Court passed upon the validity of a similar oath required by the laws of the State of Oklahoma. In the opinion, the court considered the question whether or not actual membership by a person in the Communist Party, regardless of the knowledge of the party's true character, would by the fact of membership alone exclude the person from employment because of his disloyalty. The court made this comment which is relevant here: "* * * membership may be innocent. A state servant may have joined a proscribed organization unaware of its activities and purposes." In this case the Supreme Court of the United States reversed a decision of the Supreme Court of Oklahoma, Agricultural Colleges v. Updegraff, Board of Regents of Oklahoma 205 Okla. 301, 237 P.2d 131, in effect, that the ignorance or awareness of the affiant that he had aided the Communist Party was immaterial.
In the present case the reason for application of this principle is even stronger because, to repeat, appellee was not charged with having sworn falsely he had not been a member of the Communist Party, but only with having sworn falsely that he had not lent assistance to the party. Certainly it would be easier ignorantly to lend aid to the party than to belong to it while ignorant of its objectives.
It should be remembered that the oath did not contain a statement that the affiant had not been a member of the Communist Party but that he was not at the time of taking the oath. So an anomalous situation arises. The affiant must say he has not supported the party but need not say that he has not been a member.
We are impelled to the decision that the appellee would, if these prosecutions were allowed to continue, be denied the due process of law to which he is entitled under the Constitution for if all material allegations of the informations were proved by the state, he could be convicted of perjury regardless of lack of knowledge on his part when he had at some time or other subscribed in some way or other to some movement or other that was later found to be communistic in design or purpose, despite any retraction by him when he discovered he had been misinformed or misled. This, in our view would amount to subordinating the constitutional rights of the individual to the interest of the state, however worthy, in maintaining the loyalty of its servants if, in fact, it would not amount to suppressing the individual's rights.
This conclusion does not lead us to a decision declaring the act unconstitutional because we think it is inherent in the law that when one takes the oath that he has not lent aid, advice, counsel and the like to the Communist Party, he is representing under oath that he has not done so knowingly. Garner v. Board of Public Works of City of Los Angeles, 1951, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317; Adler v. Board of Education, 1952, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517; Gerende v. Board of Supervisors, 1951, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745.
This takes us back to the informations and the particular grounds of the motions challenging the sufficiency of the allegations setting out the elements of the crime. We have already referred to the bare averments that the appellee swore he had given no aid to the Communist Party, when he had. Though we think that it is implicit in the law that he must have been conscious of his aid to the Communist Party when he gave it, there can be no inference that he was aware of what he was doing as a substitute for a direct charge to that effect in the informations. This point *111 was specifically made in the motions to quash and the ruling of the judge was abundantly justified by the lack of direct allegations that the appellee had knowingly lent aid, support, advice, counsel or influence to the Communist Party. Wieman v. Updegraff, supra.
In fine, we think a loyalty oath may be required without interfering with the federal government's operations against sedition; we think the pertinent law does not offend against the Constitution; we think the act was intended to have a retrospective effect; and we think the informations in this case were fatally defective for want of averments that the affiant had formerly wilfully given aid, support, advice, counsel, or influence to the Communist Party.
The orders of the Judge of the Criminal Court of Record must be upheld.
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
HOBSON, J., agrees to conclusion.