Stella **CONNELL**, individually, and on behalf of all persons similarly situated, Plaintiff,

v.

James M. **HIGGINBOTHAM**, Superintendent of the Orange County Board of Public Instruction; Louise Breeze, Chairman of the Orange County Board of Public Instruction; and Lowell Clements, Raymond H. Bassett, William D. LaRue, Harley Thompkins, Mrs. Lee K. Davies and Stewart M. Schaffer, Defendants.

Floyd T. Christian, Commissioner of Education, State of Florida, Intervenor.

Civ. No. 69–34.

United States District Court
M. D. Florida,
Orlando Division.

Oct. 30, 1969.

Jerome J. Bornstein, Orlando, Fla., Tobias Simon, Miami, Fla., for plaintiff.

John Motsinger, Jr., George W. Johnson, III, Orlando, Fla., for defendants.

Earl Faircloth, Atty. Gen., Rivers Buford, Jr., Asst. Atty. Gen., Tallahassee, Fla., for intervenor.

Before SIMPSON, Circuit Judge, and YOUNG and SCOTT, District Judges.

SCOTT, District Judge.

The plaintiff in this case, a teacher in the Orange County, Florida, school system, seeks on behalf of herself and others similarly situated to have Section 876.05 of the Florida Statutes, F.S.A. declared unconstitutional. In addition, plaintiff requests that a permanent injunction be granted restraining the defendants, their agents, officers and employees from executing or enforcing the provisions of this alleged unconstitutional section. Plaintiff alleges violation of her rights, privileges and immunities as a citizen of the United States, as secured by the First, Fifth and Fourteenth Amendments to the United States Constitution.

Jurisdiction exists under 28 U.S.C. § 1343(3), 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

Plaintiff alleges that (1) the loyalty oath contained in Section 876.05 of the Florida Statutes, F.S.A., which all state employees are required to execute as a condition of employment, is so vague and ambiguous that it cannot be interpreted with any reasonable degree of certainty and, since a purported violation of this section can subject one to criminal prosecution under Section 876.10 of the Florida Statutes, F.S.A., plaintiff is denied due process of law as guaranteed by the Fifth and Fourteenth Amendments, and (2) the oath abridges plaintiff's rights to freedom of speech, assembly and association as guaranteed under the First and Fourteenth Amendments.

This case was heard by a three-judge panel pursuant to 28 U.S.C. §§ 2281, 2284.

## FACTS

On or about January 16, 1969, plaintiff made application for a teaching position with the defendant Orange County school system. After interviewing the plaintiff, the principal of Callahan Elementary School, Orlando, Orange County, Florida, recommended that the plaintiff be considered for employment as a substitute teacher for the fourth grade at that school. Plaintiff was told that she could begin her teaching duties on January 27, 1969, pending routine recommendation by the superintendent and approval by the Board of Public Instruction of Orange County.

At no time prior to her employment was the plaintiff informed by the defendants of the necessity that she sign a loyalty oath; it appears, however, that the plaintiff had some knowledge of Section 876.05 of the Florida Statutes, F.S.A. at the time she commenced employment. On February 7, 1969, plaintiff was asked to execute the oath prescribed by the statute. Plaintiff declined, informing the defendants that the particular oath had been declared unconstitutional in Cramp v. Board of Public Instruction of Orange County, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285

(1961). Defendants later asked plaintiff to sign a version of the oath as judicially amended by Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla.1962). Plaintiff also refused to sign this oath. At this point processing of plaintiff's employment papers was halted, prior to their consideration by the Board of Public Instruction of Orange County.

Defendants then informed the plaintiff that they were barred by Section 876.08 of the Florida Statutes, F.S.A. from paying the plaintiff for any past or future services rendered by plaintiff until the oath was executed. Plaintiff related to defendants that she anticipated filing suit in the United States District Court and defendants informed plaintiff that she could remain in her teaching post without pay, pending decision on the matter.

On February 26, 1969, the plaintiff filed her complaint against the defendants seeking a hearing and determination of the federal constitutional issues before a three-judge court, a permanent injunction and an interlocutory injunction pending final determination restraining the defendants from discharging the plaintiff as a teacher in the Orange County school system or refusing to pay her salary as a teacher. After the Court denied plaintiff's motion for a temporary restraining order plaintiff was dismissed on March 18th by defendants from her substitute teaching position. Plaintiff worked a total of seven weeks and has received no compensation from defendants for her services.

Subsequent to the denial of the plaintiff's request for a temporary restraining order, Floyd Christian, as Commissioner of Education for the State of Florida, requested and was granted leave to intervene in this action as a party defendant.

## STANDING

Defendants contest the standing of the plaintiff to bring this action. They base this claim on the fact that plaintiff's application for employment was never considered by the Board of Public In-

struction. Defendants contend that the plaintiff was merely a prospective employee being allowed to teach on a temporary basis pending final approval by the Board of Public Instruction. Defendants claim that plaintiff's application might have been rejected by the Board for a number of reasons based on plaintiff's qualifications as a teacher. The defendants conclude that, since plaintiff was never finally employed by the Board, she cannot now properly petition this Court for an injunction to prevent her dismissal and other appropriate relief.

Defendants' argument must fail. It is apparent from the outset that defendants' administrative agents contemplated no reason why plaintiff would not be approved by the Board of Public Instruction. Defendants admit that final approval by the Board is in reality a routine matter after a recommendation by the superintendent and that permanent teachers are normally allowed to begin their teaching activities prior to approval by the Board. Neither have defendants come forward with convincing evidence of other valid grounds upon which plaintiff's dismissal might have been predicated.

The Orange County school system is an arm of state government and its agents, officers and employees are applying state law. Plaintiff is alleging that action by these state employees applying a state statute violates her constitutional rights. Plaintiff also claims that the application of this alleged unconstitutional statute will result in injury to her, i. e., denial of state employment and withholding of her salary for services rendered to the school system.

 We shall not engage in a semantical argument concerning whether state employment is a "right" or a "privilege", but suffice it to say that the essence of due process is contained in the principle that, once the state has made available the benefit of state employment, it cannot predicate that employment on grounds which the state has no right to dictate. "The fact * * *

that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution". Torcaso v. Watkins, 367 U.S. 488, at 495–496, 81 S.Ct. 1680, at 1684, 6 L.Ed.2d 982 (1960). "We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory". Wieman v. Updegraff, 344 U.S. 183, at 192, 73 S.Ct. 215, at 219, 97 L.Ed. 216 (1952). If the statute in question is unconstitutional, then plaintiff is injured by the defendants' refusal to employ her based on her failure to execute the oath, and this injury exists quite apart from the question of whether she was a "permanent" or a "temporary" teacher. Plaintiff, therefore, has the requisite standing to bring this action. See Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Gilmore v. James, 274 F.Supp. 75 (N.D. Texas 1967), affirmed 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783, rehearing denied 390 U.S. 975, 88 S.Ct. 1027, 19 L.Ed.2d 1195; Heckler v. Shepard, 243 F.Supp. 841 (E.D.Idaho 1965).

## CLASS ACTION

Plaintiff requests that she be allowed to maintain this action on behalf of all state employees who are required to execute a loyalty oath as a condition of their employment with the state. Defendants argue that plaintiff is not a proper representative of a class of state employees since her application had not been ruled upon by the Board of Public Instruction and, therefore, plaintiff was not a full-fledged state employee.

 In order for a class action to be maintained under Rule 23 of the Federal Rules of Civil Procedure, there must be an ascertainable class and a proper representative. Hamer v. Campbell, 358 F.2d 215 (5th Cir. 1966). Plaintiff in this case has gone through the applica-

tion process for securing employment with a state-operated school system. As a condition to her employment with the school system, she was required to execute an oath in accordance with Section 876.05 of the Florida Statutes, F.S.A. If the section is enforced, any person seeking employment with a state agency would be required to execute such an oath as a condition of employment. Therefore, plaintiff's situation is one which is common to an ascertainable class of persons. That class is all persons seeking employment with any state agency. See Gilmore v. James, *supra.* In addition, we find that plaintiff's cause of action meets the other requirements for a class action under Rule 23(a) and (b), Federal Rules of Civil Procedure.

## THE OATH

Having disposed of the procedural aspects, we move to consideration of the oath prescribed by Section 876.05 of the Florida Statutes, F.S.A. The section reads in full:

"876.05 State employees; oath

"All persons who now or hereafter are employed by or who now or hereafter are on the payroll of the state, or any of its departments and agencies, subdivisions, counties, cities, school boards and districts of the free public school system of the state or counties, or institutions of higher learning and all candidates for public office, are hereby required to take an oath before any person duly authorized to take acknowledgments of instruments for public record in the state in the following form:

"I,....., a citizen of the State of Florida and of the United States of America, and being employed by or an officer of.......... and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida; that I am not a member of the Communist Party; that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party; that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence; that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence.

"And said oath shall be filed with the records of the governing official or employing governmental agency prior to the approval of any voucher for the payment of salary, expenses, or other compensation".

It is well settled that a statute will be construed as severable where it is possible to interpret its provisions as distinct and to assume that the Legislature would have enacted the provisions separately. United States v. Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (1967). Indeed, this very statute has been said to be severable. Cramp v. Board of Public Instruction, 137 So. 2d 828 (Fla.1962).

The required oath contains a series of clauses to which the employee must swear. While all the matters contained in the oath are somewhat related, we feel that each clause has an independent basis for being contained in the oath. As such, the invalidity of certain portions of the oath does not prevent a meaningful application of the valid sections of the oath.

With this view of the statute, it is necessary to consider the separate validity of the clauses of the oath. First, we point out that this statute was the subject of prior litigation in the case of Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275 (1961) and Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla.1962). In the *Cramp* case before the Supreme Court of the United States, that Court ruled that the clause "that I have not and will not lend may aid, support, advice, counsel or influence to the Communist Party"

was so uncertain and vague that the state, consistent with the due process clause of the Fourteenth Amendment, could not force the employee to take the oath at the risk of subsequent prosecution for perjury or face dismissal. We are, of course, bound by this pronouncement.

We next consider the portions of the statute reading "that I am not a member of the Communist Party" and "that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or Florida by force or violence". Defendants concede that these portions of the oath may not be defensible, and they are correct. The cases are legion striking down similar language. Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1966); Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215 (1952); Gilmore v. James, 274 F.Supp. 75, affirmed 389 U.S. 572, 88 S.Ct. 695 (1968), rehearing denied 390 U.S. 975, 88 S.Ct. 1027.

The defect in the statute is that it conditions employment on non-membership or, in other words, it equates disloyalty with mere membership. In Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215 (1952), the issue was a statute which required as a condition of state employment the taking of a loyalty oath that the person was not, and had not been in the preceding five years, a member of any organization listed by the Attorney General as a "communist front" or "subversive". The Supreme Court of Oklahoma had interpreted the statute as excluding persons solely on membership regardless of knowledge of the activities or purposes of the organization. In holding that the statute violated the due process clause of the Fourteenth Amendment, the Supreme Court said:

"There can be no dispute about the consequences visited upon a person excluded from public employment on disloyalty grounds. In the view of the community, the stain is a deep one; indeed, it has become a badge of infamy. Especially is this so in time of cold war and hot emotions when 'each man begins to eye his neighbor as a possible enemy.' Yet under the Oklahoma Act, the fact of association alone determines disloyalty and disqualification; it matters not whether association existed innocently or knowingly. To thus inhibit individual freedom of movement is to stifle the flow of democratic expression and controversy at one of its chief sources. * * * Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power. The oath offends due process." 344 U.S. at 191, 73 S.Ct. at 218.

The Supreme Court of Florida, in the case of State v. Diez, 97 So.2d 105 (Fla. 1957), read the element of scienter into each of the required portions of the statute; we do not think, however, that this judicial gloss is sufficient to save these portions of the statute from constitutional defectiveness. Recent cases of the Supreme Court of the United States have pointed out that knowing membership cannot be restricted without a showing of a specific intent to further the unlawful aims of the organization.

Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), involved an Arizona statute requiring state employees to take a loyalty oath containing provisions subjecting them to criminal penalties and discharge from employment if they subsequently became or remained a member of the Communist Party or any other organization having for one of its purposes the violent overthrow of the government of Arizona or any of its political subdivisions if the employee has knowledge of such unlawful purpose of the organization. The Court stated "Any lingering doubt that proscription of mere knowing membership, without any showing of 'specific

intent' would run afoul of the Constitution was set at rest by our decision in Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992". 384 U.S. at 16, 86 S.Ct. at 1240.

The Court further stated "A law which applies to membership without the specific intent to further the illegal aims of the organization infringes unnecessarily on the protected freedoms. It rests on the doctrine of guilt by association, which has no place here". 384 U.S. at 19, 86 S.Ct. at 1242.

In Keyishian v. Board of Regents of New York, 385 U.S. 589, 87 S.Ct. 675 (1966), the Court further reinforced this point, stating, "Thus mere Party membership, even with the knowledge of the Party's unlawful goals, cannot suffice to justify criminal punishment. [Citing Scales v. United States, 367 U.S. 203 [81 S.Ct. 1469, 6 L.Ed.2d 782 (1961)]; Noto v. United States, 367 U.S. 290 [81 S.Ct. 1517, 6 L.Ed.2d 836 (1961)]; Yates v. United States, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356 (1956)]]; nor may it warrant a finding of moral unfitness justifying disbarment. Schware v. Board of Bar Examiners, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796 (1957)]". 385 U.S. at 607, 87 S.Ct. at 686.

The Supreme Court of the United States has reaffirmed this view in the recent case of United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967). In that case, involving the constitutionality of a section of the Subversive Activities Control Act of 1950, the Court stated:

"The Government emphasizes that the purpose of § 5(a) (1) (D) is to reduce the threat of sabotage and espionage in the Nation's defense plants. The Government's interest in such a prophylactic measure is not insubstantial. But it cannot be doubted that the means chosen to implement that governmental purpose in this instance cuts deeply into the right of association. Section 5(a) (1) (D) puts appellee to the choice of surrendering his organizational affiliation, regardless of whether his membership threatens the security of a defense facility, or giving up his job. When appellee refused to make that choice, he became subject to a possible criminal penalty of five years imprisonment and a $10,000 fine. The statute quite literally establishes guilt by association alone, without any need to establish that an individual's association poses the threat feared by the Government in proscribing it. The inhibiting effect on the exercise of First Amendment rights is clear. It has become axiomatic that precision of regulation must be the touchstone in an area so closely touching our most precious freedoms". 389 U.S. at 264–265, 88 S.Ct. at 424.

■ We, therefore, hold that inclusion in the oath of the clauses "that I am not a member of the Communist Party" and "that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence" unduly infringes upon the right of free association granted by the First and Fourteenth Amendments, and those clauses must be stricken from the oath.

We now give consideration to the portion of the statute which reads "that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence". It should be noted that no cases have been cited, and the Court is not aware of any cases, in which the Supreme Court of the United States has interpreted precisely this language in a loyalty oath.

■ The question is what steps may the state reasonably take in order to protect itself and the institution of ordered government from infiltration by those who adhere to the principles of violent overthrow and force. We held supra that clauses equating membership with disloyalty were overbroad in application and infringed upon First and Fourteenth Amendment freedoms. However, we hold that a clause which attempts to fer-

ret out those with personal belief in the overthrow of the government is constitutional. This clause merely attempts to keep out of state employment those who are *personally* opposed to the democratic process. Surely this is a reasonable means to a legitimate end sought by the government.

What a person believes has a central effect on the views and actions taken by that person. It would be difficult to imagine that a person believing in the overthrow of the government by force or violence, just as a person holding any belief, would not attempt to influence others around him to adopt that belief. This principle has exceptional significance when applied to school teachers. Teachers, particularly those of the lower grades, are dealing with young and very impressionable minds. Who can doubt that the teacher is one of the most important persons in the life of any youngster or that the views expressed by the teacher have great impact on the developing attitudes of the child. Moreover, the teacher, in loco parentis, is in the position of having a captive audience upon which to express his views. This is not to say that all teachers make a patent attempt to influence their students to adopt the teacher's views. The attempt, if at all, may be overt or subtle. Nevertheless, the potential for the exertion of the principles of violent overthrow as a way of life on the younger, inferior mind does exist. This potential presents grave dangers to the state's legitimate interest in educating youth and in the teaching of the principles of ordered government and the orderly process for change. The state may take reasonable steps to prevent frustration of that end. Cf. American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950).

For the same reasons we hold that the section of the oath requiring support of the Constitutions of the United States and of Florida is constitutional. Such an oath does not restrict legitimate exercise of the freedom of speech and of association. The clause in no way impermissibly restricts what the individual may believe, what he may say or to what organization he may belong. Because the clause does not "chill" these First and Fourteenth Amendment freedoms, we hold it to be a legitimate exercise of the state's interest in securing loyal employees. See Bond v. Floyd, 385 U.S. 116, 135–136, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); Knight v. Board of Regents of University of State of New York, 269 F.Supp. 339 (S.D.N.Y.1967), affirmed, memorandum, 390 U.S. 36, 88 S.Ct. 816, 19 L.Ed.2d 812.

It is, therefore,

Ordered and adjudged:

I. The following language of Section 876.05 of the Florida Statutes is constitutional, and the state may condition employment on the execution of an oath containing the following language:

"I, ........, a citizen of the State of Florida and of the United States of America, and being employed by or an officer of ........ and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida; * * * that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence".

II. We find that all provisions of the oath prescribed by Section 876.05 of the Florida Statutes, F.S.A. other than those stated in (I.) above are unconstitutional and the state may not condition employment on the execution of these disapproved provisions.

III. In light of our previous holding, all but the following language from Section 876.07 of the Florida Statutes, F.S.A. is held to be without force or effect:

"Any person having taken the oath provided for in § 876.05 and who thereafter * * * expresses any belief in * * * the overthrow of the government of the United States or of the state by violence or force * * * shall immediately be discharged from

his employment by the employing authority and his name shall be removed from the payroll, and thereafter such person shall not be permitted to receive any payment as an employee or an officer where he or she then was serving. Any person seeking to qualify for public office who fails or refuses to file the oath required by this act shall be held to have failed to qualify as a candidate for public office, and the name of such person shall not be printed on the ballot as a qualified candidate".

■■■ IV. A permanent injunction will issue from this Court restraining the defendants, their agents, officers and employees from further enforcement of Sections 876.05 and 876.07 of the Florida Statutes, F.S.A., in a form other than that approved above.

V. Since the school term for which plaintiff's contract was to run has now ended, we deem it unnecessary for this Court to consider plaintiff's request for an interlocutory injunction restraining the defendants from dismissing her from her teaching post.

■■■ VI. We hold that plaintiff was under no obligation to execute an oath containing unconstitutional language. During the time plaintiff was actually teaching no wholly constitutional oath was offered to the plaintiff by defendants for execution. Accordingly, we feel that in equity and good conscience the plaintiff is entitled to her salary as a substitute teacher for the seven weeks of actual time she spent teaching. However, we affirm the denial of the temporary restraining order by a judge of this panel to prevent the March 18, 1969, dismissal of plaintiff by the defendants. As that judge pointed out in his ruling at the conclusion of the hearing on the application for a temporary restraining order, there was no showing that the plaintiff would suffer irreparable harm by the denial of the temporary restraining order as any loss of wages could be compensated for by any damages awarded in this action.

■■ Since plaintiff's dismissal on March 18, 1969, resulted from her refusal to execute an invalid oath, such dismissal was impermissible on such a basis alone and the plaintiff is entitled to the salary she would have received from March 18, 1969, to the end of the school term in June 1969.

Judgment shall be entered in accordance with this opinion and costs shall be assessed accordingly.

GEORGE C. YOUNG, District Judge (concurring).

I concur with Judge Scott's excellent opinion with the following explanatory remarks. I agree without reservation to Judge Scott's conclusion that the portion of the prescribed oath which reads, "that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence" is constitutional. However, I reluctantly concur in the holding that plaintiff is entitled to her salary to June 1969 and that the portions of the prescribed oath reading, "that I am not a member of the Communist Party" and "that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence" are unconstitutional only because controlling decisions require such determinations by this Court.

SIMPSON, Circuit Judge (concurring. in part and dissenting in part).

In major part, I concur. I think that the court has properly disposed of the question of standing and that it correctly decides that this case meets the requirements for a class action prescribed by F.R.Civ.P. Rule 23(a) and (b).

I concur also in the majority's holding that the oath prescribed by the Florida statute (F.S.A., Section 876.05) in the amended form submitted by defendants to plaintiff is unconstitutional in each of

the particulars pointed out by the court.[1] But for similar reasons I would hold that the provision: "that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence", is also unconstitutional.

This provision deals solely with *belief,* with what is in the mind and may remain there forever unexpressed by word or deed. It does not deal with action. It does not even deal with spoken or written words advocating overthrow of government. Surely a teacher is entitled to his or her private, secret thoughts and beliefs. I view this attempt to regulate belief unattended by word or action as more clearly a violation of constitutional rights than provisions requiring an oath that the applicant does not belong to the Communist party, or that he does not belong to an organization listed as subversive by the Attorney General.[2] In those cases belief has at least been acted upon to the extent of joining an organization.

As to the provision requiring a pledge of support of the federal and state constitutions, I am not so certain. This is an innocuous provision. Violation of it would be difficult to charge and probably impossible to prove. For reasons of vagueness alone I am inclined to believe it should be stricken also.

Of course I agree that the plaintiff should be paid for her services to the end of the school term in June 1969, the contract period.

## JUDGMENT

Ordered and adjudged:

1. Final judgment shall be and is hereby entered in favor of the plaintiff, Stella Connell, individually, and on behalf of all persons similarly situated, and against the defendants, James M. Higginbotham, Superintendent of the Orange County Board of Public Instruction, Louise Breeze, Chairman of the Orange County Board of Public Instruction, and Lowell Clements, Raymond H. Bassett, William D. LaRue, Harley Thompkins, Mrs. Lee K. Davies and Stewart M. Schaffer, in accordance with the majority opinion of the Court and the opinion of Circuit Judge Simpson, concurring in part and dissenting in part.

2. The defendants, their agents, officers or employees are permanently enjoined from conditioning employment on the taking of an oath which prescribes "that I am not a member of the Communist Party" or "that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party" or "that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence", which provisions are now contained in Section 876.05 of the Florida Statutes, F.S.A. The defendants, their agents, officers and employees are likewise permanently enjoined from enforcing Section 876.07 of the Florida Statutes, F.S.A., in such a manner as to require the execution of the above disapproved phrases as a condition to remaining in the defendants' employ or as a condition to receiving payment from the defendants for services rendered.

3. The Court retains jurisdiction over this suit for the purpose of insuring compliance with the injunction and the order directed to defendants to pay the plaintiff the salary that has been adjudged to be due and owing.

4. The costs shall be hereafter taxed in favor of the plaintiff and against the defendants.

See further: Brandenburg v. State of Ohio, 1969, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430.

1. The corresponding provisions of Sec. 876.07 of course fall with the portions of Sec. 876.05 held unconstitutional.

2. Cf. cases cited and quoted from by the majority opinion on pages 451, 452.